Argued February 23, affirmed April 4, reconsideration denied May 25,
petition for review denied June 28, 1977

# WARLICK, *Petitioner,*
## *v.*
# PUBLIC WELFARE DIVISION, *Respondent.*
## (No. 2-14/01-OZI-150-6, CA 7358)
562 P2d 223

Gary Roberts, Legal Aid Service, Portland, argued the cause and filed the brief for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Petitioner appeals a determination that she was ineligible for assistance under the Aid to Dependent Children program (ADC) for the month of June, 1976. The issue is whether, in computing her need for assistance, support payments from her former husband paid to a government agency should be included in her income in the month received by the agency or in the month subsequently received by her from the agency.

This case is before us on an agreed narrative statement. Petitioner's former husband is required by court decree to pay child support and spouse support in the total amount of $350 per month in two installments of $175 each. These payments are sent by him to the Support Management Unit of the Department of Human Resources (SMU), which, pursuant to federal statutes and regulations, 42 USC § 651 (Supp IV, 1974) and 45 CFR § 301 et seq (1976), enforces child support payments to those families who would otherwise rely on public assistance. Support payments of $175 each from petitioner's former husband were received by SMU on April 26, May 10, May 25, and June 10, 1976. SMU mailed corresponding checks of $174 ($175 minus $1 service charge) to petitioner on May 27, June 1, June 8, and June 14, 1976.

Petitioner did not apply for assistance in April or May. On June 7, she applied for assistance for the month of June. The record discloses that petitioner had received two checks prior to her application, and two more checks in the month of June after applying for ADC.

The Public Welfare Division (Division) did not grant assistance for June because it found that petitioner's income exceeded her need as established by ADC standards. The Division treated all four checks as income for the month of June. The standard ADC grant would have been $293 for petitioner and

[ 23 ]

her children for the remainder of the month of June after June 7.

Petitioner requested a hearing on the denial of benefits. At the hearing petitioner contended that only the last check she received representing the support payment for June should be considered as income for that month, and that the other three checks should be considered as income for previous months and exempted as allowable reserves.[1]

The hearings officer found that the two payments received prior to the application for assistance should be considered allowable reserves. These two payments are thus not in issue. Petitioner agrees the payment of $174 attributable as the June support payment and paid to her by SMU on June 14 is income which can be used to reduce the amount of her grant. The only payment in issue is the payment received by SMU on May 25 and attributable as a May support payment which was paid to petitioner by SMU on June 8, after she had applied for assistance. The issue is whether the payment is income which could properly reduce the ADC grant or an "allowable reserve" which cannot.

Resolution of this issue requires a review of state and federal statutes and regulations respecting Aid to Families with Dependent Children. The federal government provides monetary assistance to states for use in their programs to provide aid to dependent children. As a condition to receipt of the federal grant states are required to comply with federal statutes and regulations by setting up plans meeting specific requirements which are set out in the regulations.

In general these regulations require the state plan to provide for determination of the obligation of any person to provide support for a dependent child and to

---

[1]Generally all resources are considered in determining an applicant's needs; however, an applicant is allowed to accumulate certain assets up to a maximum without the value of the assets being deducted from the total ADC grant. These accumulated assets are classified as "allowable reserves." OAR 461-4.090.

collect such support. A state must provide that "[a]s a condition of eligibility for assistance, each applicant for or recipient of AFDC shall assign to the State any _ights to support from any other person as such applicant or recipient may have." 45 CFR § 232.11(a)(1) (1976).[2] The support rights assigned to the state constitute an obligation owed to the state by the individual responsible for providing such support. 45 CFR § 302.50(a) (1976). The obligation may be established, as in this case, by a court decree. 45 CFR § 302.50(a)(1) (1976). In furtherance of the state plan Oregon created the Support Management Unit (SMU) to collect and administer support payments due an ADC recipient.

■   When the support payments are collected, SMU in conjunction · with the Division determines if the amount of the support will affect the recipient's eligibility for ADC benefits and the amount of the ADC grant. In addition, SMU is authorized under certain conditions to use a portion of the support payments collected to reimburse the state for prior ADC payments made to a recipient and reimburse the federal government to the extent of its participation in the assistance payments. 45 CFR § 302.51 (1976). Only after these determinations are made is SMU to pay the balance, if any, of the support payments to the ADC family; and only then are they actually available for the family's use. It follows SMU, pursuant to the assignment of support payments, collects the support obligations directly for benefit of the state and not as an agent of the ADC recipient.

The federal regulations mandate that the state plan must provide, in determining a recipient's need and the amount of assistance, that:

"[N]et income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal

[2]ORS 418.042 imposes such a requirement.

interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." 45 CFR § 233.20(a)(3)(ii)(D) (1976).

Petitioner contends, based on this regulation, the support payment received by SMU in May was at that time income to her since she had a "legal interest in a liquidated sum" and "the legal ability to make such sum available for support and maintenance." Since, she argues, the support payment was income to her in May it should have been included as part of her "available reserve" the same as the two May support payments paid to her by SMU prior to her application for ADC.

■ The determination of whether the support payments were available for petitioner's support and maintenance must be made in light of the entire plan mandated in the federal regulations. The support payments were not actually available for her use simply because she did not have them. The question is whether she had a legal interest in a liquidated sum and the legal ability to make such sum available. Any legal interest petitioner had in the support payments was subordinate to the interest of the state. SMU in conjunction with the Division is given the responsibility of allocating the support monies collected and determining the amount which will ultimately be transmitted to petitioner. While this process is being carried out the support payments do not constitute a liquidated sum of money to petitioner since the amount of money she will finally receive has not been determined. It follows the support payments which have been assigned to the state are not income to petitioner until paid to her by SMU.

Petitioner contends SMU should have disbursed the child support payment in May when it was received by SMU. Whether that agency acted improperly in holding the May support payment until June was not an issue before the hearings officer and thus is not an

issue in this appeal.[3] In any event she would not have been entitled to the support payments until the agency distributed them pursuant to the plan set out in 45 CFR § 302.51 (1976).

Affirmed.

---

[3]The hearings officer stated in his order:

"(The manner of SMU's handling the support is not at issue apart from the fact of delay in forwarding support received.)"