Argued September 23, 1977, reversed August 2, reconsideration denied
September 27, petition for review denied December 22, 1978

GIBSON, *Respondent,*
*v.*
JOHNSON et al, *Appellants.*
(No. A 76-02-02355, CA 7431)

582 P2d 452

Al J. Laue, Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

L. Ramsay Weit, Legal Aid Service, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Plaintiff brought a class action against the Attorney General, and two assistant attorneys general assigned to the Support Enforcement Division (SED) seeking declaratory and injunctive relief. The defendants appeal a decree enjoining them from representing plaintiff's class without first conforming to the requirements of Disciplinary Rule (DR) 5-104 of Canon 5 of the Code of Professional Responsibility.

Plaintiff, a recipient of Aid to Dependent Children (ADC), represents the class of all public assistance recipients who have been or will be contacted by SED to cooperate with the state in collecting child support payments from the absent parents of the children. ORS 418.042 requires that a recipient of ADC assign to the Department of Human Resources any right to support which the recipient may have.[1] The assignment is mandated by federal law as a condition of state participation in federally supported public assistance programs. 42 USC § 602(a)(26)(A)(Supp V, 1975).

Subsection (B) of 42 USC § 602(a)(26) requires that the recipient cooperate with the state in enforcement of the assigned support rights against the obligor, unless the recipient

"* * * is found to have good cause for refusing to cooperate as determined by the State agency in accord-

---

[1] ORS 418.042 provides:

"(1) Aid, as defined in subsection (2) of ORS 418.035, shall not be granted to, or on behalf of, any applicant, or recipient and for as long as the applicant or recipient refuses to assign to the Department of Human Resources any rights to support from any other person such applicant may have in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at any time such assignment is executed, or refuses to cooperate with the Department of Human Resources in establishing the paternity of a child born out of wedlock and in obtaining support or other payments or property due the applicant or the child.

"(2) However, nothing in this section shall be construed to require an applicant or recipient to provide identification information the validity of which is subject to honest doubts or the public disclosure of which might reasonably tend to subject the applicant to a deprivation of constitutional liberty or property rights."

[ 495 ]

ance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the child on whose behalf aid is claimed * * *."

The duty to cooperate, and not the assignment, is conditioned upon the best interests of the child. *See State ex rel Hansen v. McKay,* 31 Or App 631, 571 P2d 166 (1977).

An applicant for ADC must complete and sign Public Welfare Division (PWD) form 415 S which contains a mandatory assignment of the applicant's support rights. It also contains a number of questions regarding the whereabouts, income and occupation of the absent parent. Form 415 S, when completed, is forwarded to SED which then attempts to enforce the support obligation. The recipient is contacted by SED to assist in determining the amount of support, locating the obligor and in instituting the necessary court proceedings to establish and enforce the child support obligation.

During consultation with the recipient the SED rarely advises the recipient of the right, under certain circumstances, to refuse cooperation, that the recipient can consult private counsel or that the assistant attorney general assigned to SED represents the state and not the recipient. If the SED attorney obtains information which indicates fraud in the receipt of ADC, this information is transmitted to the PWD for its use in fraud or eligibility investigations. The recipient is usually not advised how information obtained during the consultation may be used.

In some instances the ADC recipient refuses to cooperate for fear the obligor will retaliate against the recipient or the children or that cooperation will adversely affect efforts at reconciliation. When the recipient refuses to cooperate in collecting the support obligation SED proceeds to enforce the obligation without the assistance and often over the objection of the recipient.

Depositions of several assistant attorneys general assigned to SED indicated a variation in opinion as to who these attorneys represented in collecting child support. Several of the SED attorneys stated they represented only the ADC recipient while others stated they represented both the state and the recipient. Only one stated he represented only the state.

Evidence presented by plaintiff indicated members of plaintiff's class were confused as to whether the SED attorneys were acting as their counsel. It also indicated the information received by the individual recipient from the several SED attorneys was not consistent.

The trial court found the SED attorneys represented primarily the state but also represented the ADC recipient, citing ORS 23.789(2). The court also found the SED attorneys did not systematically advise the recipients of potential or actual conflicts between the interests of the state and the recipient or that the recipient could decline cooperation with SED. The decree provided:

"* * * * *

"3) That defendants, or any of them, their agents, employees, successors in office, or any other person acting in concert with them, are permanently enjoined from representing plaintiff and/or members of plaintiff's class without first advising them:

"a) That attorneys for the Support Enforcement Division represent the State of Oregon;

"b) That adult recipients have a duty to cooperate in enabling the State to recoup its expenditures by pursuing support;

"c) That they may be excused from such cooperation if pursuit of such support in their particular case is not in the best interest of the child. That if they believe that pursuit of support is not in the best interests of their child, they should so advise their Public Welfare Division caseworker. That if the Public Welfare Division caseworker insists that they must cooperate with the Support Enforcement Division, they have a right to

request a hearing from the Public Welfare Division;

"d) That any information given to attorneys for the Support Enforcement Division may subject them to civil or criminal liability if they have been improperly receiving welfare benefits;

"e) That if they believe that pursuit of support is not in the best interest of the child, or that they may be improperly receiving welfare benefits, they should consult an attorney of their own choice. If they cannot afford an attorney, they should consult Legal Aid or the Oregon State Bar.

"f) That a decision on their part to obtain independent legal advice will not affect their eligibility to receive public assistance, although civil or criminal action may be taken against them at any time if, in fact, the State has reason to believe that they have improperly obtained public assistance;

"* * * * *."

Plaintiff contends that the actions taken by the SED attorneys vis-a-vis enforcing the child support obligation assigned to the state give rise to an attorney-client relationship between the SED attorneys and the State of Oregon and the members of plaintiff's class. Plaintiff characterizes this dual relationship as the state being the primary client and the recipient being the nominal client. Plaintiff argues an attorney representing two clients must comply with DR 5-104 of Canon 5 of the Code of Professional Responsibility. This disciplinary rule in essence requires a lawyer to decline multiple representations unless he can adequately represent each client without a conflict of interest and makes full disclosure of a potential conflict to each client who may be affected.

The defendants argue that no attorney-client relationship exists with respect to ADC recipients and, therefore, the cited provision of the Code of Professional Responsibility is not applicable.

The duties and responsibilities of the Attorney General and his professional assistants, acting as attorneys, are set forth in various statutes. They

assume the function of legal counsel only as authorized by statute. They are thus not in the same category as private lawyers in respect to representation of clients. Private counsel may represent whom he chooses, subject to the Code of Professional Responsibility. If the Attorney General and his assistants are not authorized to represent the ADC recipients as clients, the above cited canon of the Code of Professional Responsibility does not apply. The decree granted an injunction based on that provision of the Code of Professional Responsibility applicable to attorneys.

■ The court concluded that ORS 23.789(2) creates at least a nominal attorney client-relationship. That statute provides:

> "In any case involving a child or custodial parent or other dependent person who is a recipient of public assistance or care, support or services, the Support Enforcement Division of the Department of Justice shall represent such child or children, caretaker parent, other dependent person or the Department of Human Resources for the purpose of seeking modification, or enforcement through contempt proceedings, garnishment, an order for assignment of wages under ORS 23.777 or 23.783 or the Uniform Reciprocal Enforcement of Support Act, of any order or decree entered under ORS chapter 107, 108, 109, 110 or 419. The Support Enforcement Division shall also move to initiate proceedings for orders of support under those chapters."

This section on its face appears to authorize the attorneys of the SED to represent the ADC recipients as clients. However, this statute must be read in light of the entire statutory relationship of the SED to the ADC recipients. The general statutory plan is that the recipient must assign support rights to the state, and the state, with the required cooperation of the recipient-assignor, collects the support from the obligor. The support is collected on behalf of the state as assignee and not on behalf of the recipient. *See Warlick v. Pub. Wel. Div.,* 29 Or App 21, 562 P2d 223, *rev den* (1977); *Whallon and Whallon,* 23 Or App 307,

542 P2d 155 (1975). The essence of this statutorily created relationship is that of assignor-assignee. The mere fact that the assignor is required to cooperate with the attorney for the assignee does not establish an attorney-client relationship. The contact between the recipient and the SED attorneys is for the benefit of the state in recouping some of the funds paid out for aid to dependent children. The state may enforce the obligation whether the recipient cooperates or even over the specific objection of the recipient-assignor. *See State ex rel Hansen v. McKay, supra.* If the SED attorneys were representing the recipient in an attorney-client relationship, it would seem the wishes of the recipient would have to be given some status in the decision to proceed.

It is true the ADC recipient can reap the benefits of a support decree, obtained by the SED on behalf of the state, after the ADC benefits are terminated. This is merely an ancillary benefit of the state's enforcement of the support obligation for its own purposes and does not create an attorney-client relationship.

The same issue posed in this case was presented to the Oregon State Bar Committee on Legal Ethics, Opinion No. 322. The committee issued an advisory opinion which concluded that the SED attorneys represented only the state and thus no ethical problem arises. The committee included a caveat indicating the Department of Justice should advise the ADC recipients that the SED attorneys represent only the state and that the recipient should consult private counsel.

We conclude that no attorney-client relationship exists between defendants' and plaintiff's class and, therefore, DR 5-104 of the Code of Professional Responsibility does not mandate the advice set forth in the challenged injunction.[2]

---

[2]Since we conclude there is no basis for an injunction it is unnecessary to determine if an injunction is the proper method of enforcing the Code of Professional Responsibility. We, therefore, express no opinion on that point.

It may well be true that the information which the injunction would require the SED attorneys to give is necessary for the recipient to make an informed decision whether to cooperate, seek advice of counsel or resist collection of the support payments in the best interest of the child. However, the requirement of disclosing this information will have to come from statute, regulation or internal management directive of the Attorney General.

Reversed.

**JOSEPH, J.,** specially concurring.

I agree with the result, but I believe there is a better ground. This is not a case in which a trial judge has exercised his inherent power to control the conduct of lawyers involved in litigation before him. It is a class action on behalf of a very large and ever changing class. It has every appearance of being a tactical stage in a wide-ranging strategic dispute between the Attorney General and the SED on one side and the class and its counsel on the other. The decree under review would place the trial judge in a supervisory position over the day-to-day operations of the attorneys and would predictably result in a series of individual contempt skirmishes every time a well-advised member of the class wants to avoid cooperation with SED.

Ethical standards ought not to be a general foundation for the intervention of equity and certainly not on behalf of a class. Individual members of this class have the same recourse to the disciplinary machinery as every member of the public, whether they are "clients" or simply individuals affected by misconduct. The intervention of equity is neither needed nor wise. I would hold that the trial court erred in accepting jurisdiction.