**B.J.R.L., et al., Plaintiffs,**

v.

**The STATE OF UTAH, et al., Defendants.**

**Civ. No. C86–324G.**

United States District Court, D. Utah, C.D.

Jan. 28, 1987.

Brian M. Barnard, Salt Lake City, Utah, for plaintiffs.

Michael D. Smith, Logan, Utah, for defendants.

1. There has been no certification of the class.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on December 18, 1986, on defendants' Motion to Dismiss. Plaintiffs were represented by Brian M. Barnard and defendants were represented by Michael D. Smith. Plaintiffs and defendants submitted memorandums of law and the court heard oral argument, after which the matter was taken under advisement. The court now being fully advised, sets forth its Memorandum Decision and Order.

## BACKGROUND

Plaintiffs are suing personally and as representatives for a class of Utah residents who have minor children born out of wedlock,[1] and who have received or will seek public assistance from the State of Utah under federally assisted programs such as the Aid to Families with Dependent Children ("AFDC"). Plaintiffs have named as defendants the State of Utah; the Utah State Department of Social Services; the Utah State Office of Recovery Services; David L. Wilkinson, Attorney General of the State of Utah ("Wilkinson"); Sandy Mooy, Assistant Attorney General of the State of Utah ("Mooy"); David Tibbs, Assistant Attorney General of the State of Utah ("Tibbs"); John Does I and II, Employees of the Utah State Office of Recovery Services ("collectively" "Does"); James N. Kidder, Director, Support Enforcement Office of the Office of Recovery Services ("Kidder"); John P. Abbott, Director, Office of Recovery Services ("Abbott"); and Andy Haag, Director, Assistance Payments Office ("Haag").

Plaintiff B.J.R.L. alleges that prior to August 1985, she sought approval from the Utah Assistance Payments Office to receive public assistance under the AFDC program. In August of 1985, B.J.R.L. gave birth to her son, J.J.L. At the time of the birth, B.J.R.L. was not married to J.J. L.'s father. At that time B.J.R.L. began receiving monthly payments from the State

of Utah under the AFDC program to benefit B.J.R.L. and J.J.L. As a condition to receiving those AFDC benefits, B.J.R.L. was required to sign an agreement to cooperate with the State of Utah in seeking support from J.J.L.'s father and to assign to the Department of Social Services and the Office of Recovery Services all money which might be recovered as support from J.J.L.'s father. Utah Code Ann. § 78–45b–3 (1977). Thereafter a paternity action was instituted in Utah state court in the name of the State of Utah, by and through the Utah State Department of Social Services. In that action the State of Utah sought to establish paternity regarding J.J.L. and to obtain an Order for past and future child support obligations for the child. As a consequence of filing of that action it became public record that B.J.R.L. and J.J.L. had been receiving public assistance, that B.J.R.L. had given birth to a child out of wedlock, and that J.J.L. was that child. B.J.R.L. and J.J.L. are not parties to the pending paternity action and are not represented by the State of Utah in that action. Further, B.J.R.L. and J.J.L. are without resources to obtain their own legal representation. B.J.R.L. has requested that the Utah State Attorney General represent the interests of B.J.R.L. and J.J.L. in the paternity action, but that request has been denied. B.J.R.L. asserts that the putative father of J.J.L. has a history of violence.

The allegations of plaintiff D.J.R. and her minor son, C.D.R., are essentially the same as those of B.J.R.L. and J.J.L. In addition, however, D.J.R. has alleged that Assistant Attorney Generals Mooy and Tibbs have insisted that D.J.R. participate in the compromise and resolution of her future rights to support against the putative father even though neither D.J.R. and C.D.R. are represented parties in the paternity suit. Further, D.J.R. is no longer receiving public assistance.

## LEGAL ANALYSIS

Plaintiffs allege violation of their constitutional rights to privacy and due process of law under 42 U.S.C. § 1983 of the Civil Rights Act, and violation of 5 U.S.C. § 552a of the Privacy Act of 1974. Plaintiffs also assert pendent state law claims based upon the common law right to privacy and several provisions of Utah statutory law which deal with public disclosure of private information. Plaintiffs seek only declaratory and injunctive relief and not money damages under their asserted legal theories. Before this court can deal with the possible merits of plaintiffs' claims, fundamental issues of sovereign immunity, absolute immunity and qualified immunity must be resolved.

## I. SOVEREIGN IMMUNITY

The United States Supreme Court frequently has reiterated that with one limited exception of prospective injunctive relief the Eleventh Amendment prevents a state from being sued in federal court by anyone other than the federal government or another state. *Ex Parte Young*, 209 U.S. 123, 149, 28 S.Ct. 441, 449, 52 L.Ed. 714 (1908); *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985). However, the Supreme Court has acknowledged that immunity is not present if a state unequivocally has consented to suit, or if Congress, pursuant to a valid exercise of power, unequivocally has expressed its intent to abrogate immunity. *Green*, 106 S.Ct. at 425–26. Here, plaintiffs argue that because 42 U.S.C. § 1983 grants a remedy to "every person [who is] ... depriv[ed] of any rights, privileges, or immunities secured by the Constitution ...," Congress necessarily has abrogated immunity from such suits. In support of that position plaintiffs rely on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976) wherein the Supreme Court stated that pursuant to Section 5 of the Fourteenth Amendment, "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provision of the Fourteenth Amendment, provide for private suits against states or state officials which are constitutionally impermissible [under the Eleventh Amendment] in other contexts." Based upon *Fitzpatrick* there can be no question but that Congress *could* unequiv-

ocally abrogate immunity from civil rights suits brought pursuant to legislation enforcing Section 5 of the Fourteenth Amendment. However, Congress has declined to do so. In *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) the Supreme Court expressly rejected the argument that 42 U.S.C. § 1983 or its accompanying legislative history demonstrates a Congressional intent to abrogate sovereign immunity. *See also Lee v. McManus,* 589 F.Supp. 633, 638 (D.Kan.1984). Therefore, for plaintiffs to be able to proceed their suit must come within the prospective injunctive relief exception created by the Supreme Court to the principle of sovereign immunity.

In *Ex Parte Young,* 209 U.S. 123, 155–59, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908) the Supreme Court held that a state officer could be sued in federal court to prevent enforcement of an unconstitutional state law. The result of that holding is that suit may be brought in federal court against state officials so long as only prospective injunctive relief is sought as relating to an alleged constitutional violation. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *see also Navajo Nation v. District Court for Utah County,* 624 F.Supp. 130, 137 (D.Utah 1985). In *Edelman v. Jordan,* 415 U.S. 651, 666–67, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974) the Supreme Court extended the restrictive parameters of the *Ex Parte Young* exception to suits against state officials when prospective relief is sought to prevent violation of federal law. Here plaintiffs seek prospective relief to prevent the State of Utah from initiating or prosecuting paternity suits which affect the rights of plaintiffs without joining plaintiffs as parties and without providing legal representation for them. Plaintiffs also seek prospective relief to require that the names of the mothers and children be obscured in the paternity suits brought by the state and that all personal information given in connection with those actions be protected.

■ Based upon the foregoing analysis of sovereign immunity we hold that plaintiffs' claims for prospective relief from alleged constitutional violations and violations of federal law should be allowed to proceed against all named state officials. The claims against the State of Utah; the Utah Department of Social Services and the Utah Office of Recovery Services must be dismissed,[2] without prejudice to being brought in a proper forum. In addition, defendants Doe I and Doe II are also dismissed because there is no allegation that either are officials of the State of Utah, but rather that both are alleged employees of the state.[3]

■ The final issue regarding sovereign immunity deals with plaintiffs' pendent state law claims. In *Pennhurst State*

---

**2.** *See Brennan v. University of Kansas,* 451 F.2d 1287, 1290 (10th Cir.1971) (state agency functioning as an arm or alter ego of the state cannot be sued in federal court because of the prohibition by the Eleventh Amendment); *Atchison v. Nelson,* 460 F.Supp. 1102, 1105 (D.Wyo.1978) (Wyoming Career Service Counsel, the Department of Health and Social Services and the Department of Administration and Fiscal Control are immune from suit because they are extensions of the state).

**3.** There is an issue regarding whether the claims against Assistant Attorneys General Mooy and Tibbs should also dismissed based on sovereign immunity. Although plaintiff argues that civil rights complaints may be maintained against Mooy and Tibbs as individuals it is apparent that the relief sought in this case is based upon future official policy decisions of the State Attorney General's Office. Thus, Attorney General Wilkinson is a proper party for that purpose. However, defendants Mooy and Tibbs are also officials of the State of Utah and are likely to be the parties who implement whatever policy determinations are made by Attorney General Wilkinson. *See Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980) ("Prosecutors ... are natural targets for § 1983 injunctive suits since they are the state officials who are threatening to enforce and who are enforcing the law."). Therefore this court has determined that Mooy and Tibbs may be retained as defendants despite the fact that their presence is not required to effectuate the relief requested by plaintiffs.

*School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) the issue before the Supreme Court was whether the exceptions of *Ex Parte Young* and *Edelman* would be extended so that a state official could be sued in federal court to prevent prospective violations of *state* law. In *Pennhurst* the court held:

A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty.... We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Id.* at 106, 104 S.Ct. 900. Based upon *Pennhurst* we hold that plaintiffs' pendent state claims must be dismissed, without prejudice, as to all parties.

## II. ABSOLUTE AND QUALIFIED IMMUNITY

■ Defendants Wilkinson, Mooy and Tibbs argue that if plaintiffs' case is not dismissed based upon sovereign immunity, they nevertheless are entitled to absolute immunity. The basis for that contention is *Imbler v. Pachtman,* 424 U.S. 409, 420, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1970) wherein the Supreme Court held that the concept of prosecutorial immunity applies to actions under 42 U.S.C. § 1983. However, the principle of absolute immunity has no application to this case. The Supreme Court in *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984) held that the doctrine of absolute judicial immunity is not a bar to prospective injunctive relief against a judicial officer who acts in his or her judicial capacity. Therefore, absolute immunity does not bar the relief sought by plaintiffs in this case. Defendants also argue that based on *Harlow v. Fitzgerald,* 457 U.S. 800, 813, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982) they are public officers entitled to qualified immunity. However, the Supreme Court has recognized that qualified immunity is also not a bar to injunctive relief. *Wood v. Strickland,* 420 U.S. 308, 314–15 n. 6, 95 S.Ct.

992, 996–97, n. 6, 43 L.Ed.2d 214 (1975); *see also Brown v. Bathke,* 566 F.2d 588, 593 (8th Cir.1977). Therefore qualified immunity likewise has no bearing on plaintiffs' claims in this case.

## III. FEDERAL CLAIM—PRIVACY ACT

■ Defendants argue that plaintiffs' claims under the Privacy Act of 1974 must be dismissed because that Act applies only to federal agencies. *See UNT v. Aerospace Corp.,* 765 F.2d 1440, 1447 (9th Cir. 1985); *Polchowski v. Gorris,* 714 F.2d 749, 752 (7th Cir.1983); *see also Forsham v. Harris,* 445 U.S. 169, 180–82, 100 S.Ct. 977, 984–85, 63 L.Ed.2d 293 (1980) (federally funded grantee did not generate "agency records" under privacy statute). Plaintiffs respond by arguing that because the defendant agencies have previously relied on the Privacy Act as a basis for refusing to disclose information and because those agencies accept federal funds, those agencies should be considered "federal agencies" for purposes of the Privacy Act. Even if the defendant agencies could be considered "federal" for purposes of the Privacy Act, however, there is insufficient evidence that those state agencies have expressly or impliedly waived their sovereign immunity. The Supreme Court has implicitly recognized that a state agency which administrates the AFDC program is entitled to the full benefit of immunity under the Eleventh Amendment. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 425–29, 88 L.Ed.2d 371 (1985) (suit against the Director of the Michigan Department of Social Services seeking declaration that prior conduct violated state law was barred by Eleventh Amendment). Accordingly, this court has dismissed the State of Utah and all defendant agencies and therefore there is no "agency," state or federal, that could be held to be subject to the Privacy Act. The Tenth Circuit clearly has held that the Privacy Act does not apply to individual officers or employees of an agency. *Parks v. United States Internal Revenue Service,* 618 F.2d 677, 684 (10th Cir.1980). As a result, plaintiffs'

Privacy Act claim also must be dismissed as against the individual defendants.[4]

## IV. CONSTITUTIONAL CLAIM—PRIVACY

Plaintiffs B.J.R.L. and D.J.R. have alleged that defendants' public disclosure of the fact that they are the mothers of illegitimate children and that they have received public assistance violates their constitutionally recognized right to privacy. Plaintiffs J.J.L. and C.D.R. contend that public disclosure of the fact that they were born out of wedlock violates their right to privacy.

The United States Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) distinguished between two separate types of privacy interests. One type is an "interest in independence in making certain kinds of important decisions." *Id.* at 599, 97 S.Ct. at 876.[5] The Court in explaining such fundamental privacy interests stated that in "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education ... it has been held that there are limitations on the States' power to substantially regulate conduct." *Id.* at 599 n. 26, 97 S.Ct. at 877 n. 26 (citing *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976)). The Court described the other type of privacy interest as "the individual interest in avoiding disclosure of personal matters...." *Id.* 429

U.S. at 599, 97 S.Ct. at 876. That second type of privacy interest, which is involved in this case, has been less developed than the first and has its roots in three Supreme Court cases. These rights ultimately may be recognized as none the less fundamental in certain situations.

The first case to deal with an interest in preventing governmental disclosure of private information was *Paul v. Davis*, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). In *Paul* the plaintiff had been arrested for shoplifting. Thereafter the chief of police of Louisville, Kentucky distributed the name and picture of "active shoplifters" to approximately 800 area merchants. Plaintiff's name and picture was included in the list although at that time plaintiff had entered a plea of not guilty and the shoplifting case had been put under a status of "filed away with leave to reinstate." Plaintiff claimed that distribution of that information by the police violated his "right to privacy guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments." The Supreme Court rejected the plaintiff's claim by stating that "the personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty....'" *Id.* 424 U.S. at 713, 96 S.Ct. at 1166. The court described the plaintiff's interest in not publicizing an offi-

---

4. *See also UNT v. Aerospace Corp.,* 765 F.2d 1440, 1440 (9th Cir.1985) (Privacy Act does not apply to individuals); *Windsor v. The Tennessean,* 719 F.2d 155, 160 (6th Cir.1983) (the term "agency" does not encompass individual government officials); *Polchowski v. Gorris,* 714 F.2d 749, 752 (7th Cir.1983) (Congress foreclosed private enforcement against state or local officials); *Bruce v. United States,* 621 F.2d 914, 916 n. 2 (8th Cir.1980) (Act provides for civil remedies only against the agency, not individuals).

5. The Court in *Wahlen,* 429 U.S. at 599 n. 26, 97 S.Ct. at 876 n. 26 cited the following cases as examples of situations where fundamental independent decision making interests were recognized: *Roe v. Wade,* 410 U.S. 113, 153–59, 93 S.Ct. 705, 726–29, 35 L.Ed.2d 147 (1973) (women's qualified right to terminate her pregnancy); *Doe v. Bolton,* 410 U.S. 179, 193–200, 93 S.Ct. 739, 748–51, 35 L.Ed.2d 201 (1973) (certain procedural impediments to women's decision to terminate her pregnancy violate Fourteenth Amendment); *Loving v. Virginia,* 388 U.S. 1, 12,

87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (statute preventing marriages between persons on basis of racial classification violates due process); *Griswold v. Connecticut,* 381 U.S. 479 (485–86), 85 S.Ct. 1678 (1682), 14 L.Ed.2d 510 (1965) (statute forbidding use of contraceptives violates the right of marital privacy); *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (statute requiring parents to send children to public schools exclusively is an unreasonable interference with the liberty of the parents); *Meyer v. Nebraska,* 262 U.S. 390, 399–402, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923) (law forbidding the teaching in schools of any modern language other than English invades the liberty guaranteed by Fourteenth Amendment); and *Allgeyer v. Louisiana,* 165 U.S. 578, 590–91, 17 S.Ct. 427, 431–32, 41 L.Ed. 832 (state citizen has a right to contract outside of the state for insurance on his property).

cial act such as arrest as "far afield" from prior privacy decisions. *Id.*

The next case to deal with a similar privacy interest was *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). In *Whalen* plaintiffs challenged the constitutionality of a New York statute which required that physicians disclose to the New York State Department of Health the names and addresses of their patients who received certain prescription drugs. The Supreme Court held that such disclosures were not distinguishable from other unpleasant invasions of privacy associated with health care and therefore did not constitute an invasion of any right or liberty protected by the Fourteenth Amendment. *Id.* at 602–04, 97 S.Ct. at 877–79. However, the Court did seem to recognize that in proper circumstances the Constitution would protect an "individual interest in avoiding disclosure of personal matters...." [6]

The third case to deal with the privacy interest of avoiding governmental disclosure of personal information was *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). In *Nixon* the court upheld the Presidential Recordings and Materials Preservation Act, 44 U.S.C. § 2107 against a challenge brought by former President Nixon. Under the Act the Administrator of General Services would take custody of former Presidential papers and tape recordings and grant public access to such materials subject to screening and return of private papers to the former President.

The Supreme Court upheld the Act by applying the following balancing analysis:

> [T]he merit of appellant's claim of invasion of his privacy cannot be considered in the abstract; rather, the claim must be considered in light of the specific provisions of the Act, and any intrusion must be weighed against the public interest in subjecting the Presidential materials of appellant's administration to archival screening.

*Id.* at 458, 97 S.Ct. at 2797.

There is a dispute among the circuit courts on the issue of whether the Supreme Court's opinions in *Whalen* and *Nixon* overrule or at least undercut the holding in *Paul v. Davis. Compare J.P. v. DeSanti,* 653 F.2d 1080, 1088–91 (6th Cir.1981) (*Whalen* does not overrule *Paul v. Davis* and therefore there is no general right to a Constitutional balancing of government action against individual privacy absent personal rights that are "fundamental" or "implicit in the concept of ordered liberty."), with *Fadjo v. Coon,* 633 F.2d 1172, 1176 (5th Cir. Unit B 1981) ("[T]he district court must balance the invasion of privacy alleged by [plaintiff] against any legitimate interests proven by the state."). In this regard, we consider *Slayton v. Willingham,* 726 F.2d 631 (10th Cir.1984) to be dispositive as to cases arising in the Tenth Circuit:

> We think that the district court misapplied *Paul v. Davis.* That case held that publicity that damaged the plaintiff's reputation and no more was neither a deprivation of his fourteenth amendment liberty interest nor a violation of his con-

---

6. *Id.,* 165 U.S. at 599, 97 S.Ct. at 876. The court in *Whalen,* 429 U.S. at 529 n. 25, 97 S.Ct. at 876 n. 25 cited the following cases in support of the proposition that there is a right to privacy from disclosure of personal matters. *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Bradeis, J., dissenting) ("[T]he right to be let alone [is] the most comprehensive of rights and the right most valued by civilized men"); *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) ("[T]he First Amendment has a penumbra where privacy is protected from governmental intrusion."); *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542 (1969) ("[F]undamental is the right to be free, except in very limited circumstances, from

unwanted governmental instrusions into one's privacy."); *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 86, 94 S.Ct. 1494, 1529, 39 L.Ed.2d 812 (1974) (Douglas, J., dissenting) (Legislation providing government with "large access to one's beliefs, ideas, politics, religion, ultimate concerns, and the like ... should be 'narrowly drawn'"); *California Bankers Ass'n,* 416 U.S. at 78, 94 S.Ct. at 1525 (Powell, J. concurring) ("At some point, governmental intrusion [into bank records] would implicate legitimate expectations of privacy"); *but see Whalen,* 429 U.S. at 608–09, 97 S.Ct. at 881 (Stewart, J., concurring) (there is no general constitutional right to privacy and the Court's holding is not to the contrary).

stitutional right to privacy.... Since *Paul v. Davis*, however, the Supreme Court has explicitly recognized [in *Whalen* and *Nixon*] that the constitutional right to privacy encompasses an "individual interest in avoiding disclosure of personal matters."

*Id.* at 635 (citations omitted); *see also Coe v. U.S. District Court for the District of Colorado*, 676 F.2d 411, 418 (10th Cir.1982) ("The issue is one of weighing the scales between the public's interest and the rights to privacy advanced by [plaintiff]"). In *Slayton* the court reversed the trial court's grant of summary judgment and held that allegations by the plaintiff that the police had exhibited "highly sensitive, personal, and private" photographs presented a triable constitutional claim of privacy. However, the court remanded to the district court to determine (1) whether the plaintiff had a legitimate expectation of privacy in the photos, and (2) whether his privacy interests outweighed the public need for disclosure. *Slayton*, 726 F.2d at 635 (citing *Nixon v. Administrator of General Services*, 433 U.S. 425, 465–66, 97 S.Ct. 2777, 2801–02, 53 L.Ed.2d 867 (1977)).

■ Based upon *Slayton* we hold that plaintiffs' claims of privacy must be balanced against the state's need to disclose the plaintiffs' names in the paternity action. Although we express no opinion, under facts most favorable to plaintiff on this

motion, the balance could be found to weigh in favor of the privacy of individuals. Resolution of such factual matters must await trial, and therefore defendants' motion to dismiss those claims is denied.[7]

## V. CONSTITUTIONAL CLAIM—PROCEDURAL DUE PROCESS

The Supreme Court in *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971) discussed the meaning of procedural due process:

Prior cases establish, first, that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.

Here plaintiffs' essential allegation with regard to their claim of a violation of due process is that they are not made parties to the paternity action and in their absence important determinations may be made. Plaintiffs specifically have alleged that defendants have "insisted that [plaintiffs] participate in the compromise of and resolution of her future rights to support as against the putative father in said paternity action...." Plaintiffs also contend that issues such as visitation, custody and physical protection of the child may be dealt

---

**7.** Defendants cite *Doe v. Norton*, 365 F.Supp. 65 (D.Conn.1973) for the proposition that plaintiffs have no privacy interest in the type of information disclosed in this case. In *Doe* an unwed mother challenged a Connecticut statute which required that she disclose the name of the child's putative father and institute a paternity action or be subject to being held in contempt. The defendants have failed to recognize the limited precedential value of *Doe* in that the case was subsequently reversed and remanded by the United States Supreme Court in light of amendments to federal law. *Roe v. Norton*, 422 U.S. 391, 95 S.Ct. 2221, 45 L.Ed.2d 268 (1974). Upon remand in *Doe v. Mahler*, 414 F.Supp. 1368 (D.Conn.1976) the district court again upheld the law and again was reversed and remanded by the Supreme Court for specific determinations under the federal statute. *Maher v. Doe*, 432 U.S. 526, 97 S.Ct. 2474, 53 L.Ed.2d 534 (1977). The Supreme Court in both of its rulings did not find it necessary to reach the constitutional questions because of questions of fed-

eral law. It should also be noted that the district court's constitutional analysis was written prior to the Supreme Court's rulings in *Whalen* and *Nixon*. However, even if the district court's constitutional analysis is good law there are significant factual distinctions between that case and the privacy interests asserted here. In *Doe* the plaintiffs refused to disclose any information concerning the father. In those circumstances the state's significant interest in establishing paternity was frustrated. Here plaintiffs have agreed to cooperate fully with the state in establishing paternity and have given full information regarding the father. The only request by plaintiffs is that their names be masked on the complaint to avoid public disclosure. The interest asserted by the state in refusing that request is administrative convenience. Although we express no view on the outcome, this court recognizes that in the circumstances here the interests to be balanced are different than in *Doe*.

with by the state court without the benefit of input from the child or the mother.

Defendants strongly disagree with plaintiffs' characterization of the type of issues to be resolved in the paternity action. Defendants point to *State v. Smith*, 699 P.2d 710, 711 (Utah 1985) wherein the Utah Supreme Court held that in a paternity action brought by the State of Utah, the mother was not an indispensable party under Utah R.Civ.P. 19(a). The court in *Smith* stated: "In the instant case, however, [the State of Utah] and the child's mother do not share a joint interest. By accepting support on behalf of her child, the mother has assigned to plaintiff the right to collect support." *Smith*, 699 P.2d at 711. Defendants further contend that ethically they may not represent both the state and the mother and therefore the only interest they represent in such paternity suits is that of an assignee of a support obligation. *Cf. Gibson v. Johnson*, 35 Or.App. 493, 582 P.2d 452, 455–56 (1978) (the state as assignee of support rights did not have an attorney-client relationship with the support recipient and therefore a conflict of interest under DR 5–104 of Canon 5 of the Code of Professional Responsibility was not present).

Plaintiffs have alleged that important issues such as support, custody and visitation will be presented and may be decided in the paternity suit brought by the state. Since this is a motion to dismiss all of plaintiffs' factual allegations must be taken as admitted. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). Based on the present record the court is unable to resolve the factual disputes so as to be able accurately to balance the interests involved and thereby determine whether due process requires that plaintiffs be joined as parties or be provided with counsel in such paternity

suits.[8] Therefore, defendants' motion to dismiss those claims is denied.

## VI. WAIVER OF CONSTITUTIONAL RIGHTS

■ The Supreme Court has established that waiver of fundamental constitutional rights must be voluntary, knowing and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *see also United States v. Rich*, 589 F.2d 1025, 1032–33 (10th Cir.1978). Defendants have alleged that plaintiffs were given written notice that they would need to assign their support rights to the state of Utah and cooperate in establishing paternity as a prerequisite to receiving assistance under the AFDC program.[9] Defendants contend that based upon that representation plaintiffs made a voluntary, knowing and intelligent waiver of any private information that was disclosed in the paternity action. However, plaintiffs have alleged that they disclosed the essential facts regarding paternity "with the understanding that said information would be kept private and confidential by the defendants." That factual allegation must be regarded as admitted for purposes of this motion. Therefore, defendants' argument with regard to waiver must await factual resolution.

Based upon the above analysis plaintiffs' claims against the State of Utah and the named state agencies are hereby dismissed. Plaintiffs' claims against the named individual defendants based upon the Federal Privacy Act are dismissed, but the defendants' motion to dismiss as to constitutional claims is hereby denied. All pendent state law claims are dismissed.

This Memorandum Decision and Order will suffice as the court's final action on

---

**8.** *See Lassiter v. Department of Social Services*, 452 U.S. 18, 24–25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981):

'[D]ue process' has never been, and perhaps can never be, precisely defined.... Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any rele-

vant precedents and then by assessing the several interests that are at stake.

**9.** However, 45 C.F.R. 232.40 (1985) provides that a mother seeking aid through AFDC may decline to cooperate in establishing paternity of her child if it is shown that refusal to cooperate would be in the best interests of the child.

this motion; no further Order need be prepared by counsel.