**Robin HANEY, Plaintiff–Respondent,**

v.

**STATE of Oklahoma, Defendant–Petitioner.**

**No. 79470.**

Supreme Court of Oklahoma.

April 6, 1993.

**1088**

Susan B. Loving, Atty. Gen., W. Craig Sutter, Oklahoma City, for petitioner.

Carol Seacat, Okmulgee, for respondent.

LAVENDER, Vice Chief Justice.

The question we answer in this case is whether an attorney-client relationship arises between a district attorney and a custodial parent when the district attorney attempts to collect child support obligations from a non-custodial parent, pursuant to a contract between the district attorney and the Oklahoma Department of Human Services (DHS). We answer in the negative.

## PROCEDURAL AND FACTUAL BACKGROUND

Robin Haney (Haney) applied to DHS for collection of child support obligations from her former husband. The District Attorney for the County of Okmulgee (District Attorney), pursuant to a contract with DHS, prosecuted the child support action in case No. JFD–85–229, District Court of Okmulgee County, State of Oklahoma.[1] The district court granted Haney a lien against a claim her former husband had pending in the Superior Court of the State of California, County of Los Angeles. District Attorney allegedly did not perfect the lien, and when the proceeds were distributed upon settlement of the claim, Haney was not paid.

Haney brought suit against the State of Oklahoma for the professional negligence of District Attorney under the Governmental Tort Claims Act, 51 O.S.1991, § 151 et seq. The State moved to dismiss for failure to state a claim upon which relief could be granted.[2] The State contended Haney had no valid claim because the requisite attorney-client relationship did not exist between a district attorney and a custodial parent who applies for aid in securing child support obligations through DHS. The trial court refused to dismiss, finding an attorney-client relationship is established between district attorneys who enter into

---

**1.** 56 O.S.Supp.1982, § 237.1 authorizes DHS to enter into contracts with District Attorneys for the enforcement and collection of child support.

**2.** 12 O.S.Supp.1984, § 2012(B)(6).

agreements with DHS to collect child support obligations and custodial parents who apply for child support enforcement assistance. Upon the State's petition for immediate interlocutory appeal, we granted certiorari.[3]

## DISCUSSION

 In reviewing the denial of a motion to dismiss for failure to state a claim upon which relief can be granted, we are guided by the general rule a petition should not be dismissed unless it appears beyond doubt plaintiff can prove no set of facts in support of her claim which would entitle her to relief.[4] One of the requisite elements of a legal malpractice claim is the existence of an attorney-client relationship.[5] We have determined that, under any set of facts, no attorney-client relationship formed between the District Attorney and Haney, as custodial parent.

 The resolution of this case requires a construction of various statutes. The primary goal of statutory construction is to ascertain and follow the intention of the Legislature.[6] In construing statutes, relevant provisions must be considered together, whenever possible, to give force and effect to each.[7] Further, the cardinal rule is to begin with consideration of the language used.[8] With these rules in mind we turn to a discussion of whether the statutory framework which gave rise to this action permitted the formation of an attorney-client relationship between District Attorney and Haney.

In 1974, Congress added Title IV, Part D to the Social Security Act through Pub.L. No. 93–647, 88 Stat. 2351 (codified as amended at 42 U.S.C. §§ 651 *et seq.*). The IV–D amendment established a Child Support Enforcement Program for, among other things, "[T]he purpose of enforcing the support obligations owed by absent parents to their children...."[9] The Act requires each state to develop and implement a plan, subject to federal approval, for delivery of child support program services in order to qualify for federal funds in providing those services.[10]

The Oklahoma Legislature responded by adopting several statutes to comply with the federal act.[11] The child support program in Oklahoma is administered by DHS. 56 O.S.Supp.1982, § 237(A) provides in pertinent part:

> The Department of Human Services ... as the single state agency designated to administer a statewide plan for child support, is authorized in accordance with Title IV, Part D, of the Federal Social Security Act, as amended, 42 U.S.C., sec. 651 et seq. to provide child support collection ... to enable it to participate in programs established by federal law.

DHS is allowed to enter into agreements with district attorneys for the enforcement and collection of child support obligations.[12] In the present case, District Attorney contracted with DHS to collect and enforce child support obligations. District Attorney prosecuted the matter to enforce the child support obligation of Haney's former husband. The question raised is whether such an arrangement gives rise to an attorney-client relationship.

The Title IV–D program establishes child support and enforcement of court ordered child support orders for children receiving aid to families with dependent children (AFDC), and for any other child whose

---

**3.** 12 O.S.1991, § 952(b)(3).

**4.** *Niemeyer v. U.S. Fidelity and Guaranty Company,* 789 P.2d 1318, 1321 (Okla.1990).

**5.** *Allred v. Rabon,* 572 P.2d 979, 981 (Okla.1977).

**6.** *Hess v. Excise Board of McCurtain County,* 698 P.2d 930, 932 (Okla.1985).

**7.** *Dana v. State,* 656 P.2d 253, 258 (Okla.1982).

**8.** *Seventeen Hundred Peoria, Inc. v. City of Tulsa,* 422 P.2d 840, 843–44 (Okla.1966), quoting

*City of Bristow, ex. rel. Hedges v. Groom,* 194 Okla. 384, 151 P.2d 936, 940 (1944).

**9.** 42 U.S.C. § 651.

**10.** 42 U.S.C. § 654.

**11.** *See e.g.* 56 O.S.Supp.1983, §§ 231 *et seq.*

**12.** 56 O.S.Supp.1982, § 237.1.

custodian applies for services.[13] Likewise, 56 O.S.Supp.1985, § 240.5 provides:

> Those persons not receiving aid to families with dependent children shall be given equal access to the services provided by [DHS] through its statewide plan for child support authorized by the federal Social Security Act.

Further, 56 O.S.Supp.1987, § 237(D) affirms this duty by stating in pertinent part:

> The [DHS] may, when support rights have been assigned to it or upon proper application by an individual not receiving aid to families with dependent children, establish medical support or child support, enforce orders for medical support and any support, and make collection and distribution of child support monies.... A reasonable fee and costs may be assessed for services to individuals not receiving aid to families with dependent children under rules and regulations adopted by [DHS].

Thus, the statutory scheme enacted by the Legislature allows both recipients and non-recipients of AFDC to apply for child support enforcement collection assistance.

42 U.S.C. § 656(a)(1) provides, "[t]he support rights assigned to the State ... shall constitute an obligation owed to such State by the individual responsible for providing support." In Oklahoma, AFDC recipients must assign support rights to the state, and the state collects the support from the obligor. 56 O.S.Supp.1987, § 237(C)(1) provides in pertinent part:

> An Applicant for or recipient of aid to families with dependent children, hereinafter referred to as "recipient", shall be required to assign to [DHS] any rights of or support from any other person which the recipient may have in his or her own behalf or for a child for whom the recipi-

ent is applying for or receiving assistance....

In interpreting statutes implementing Title IV, Part D, other jurisdictions have maintained district attorneys represent the interests of the County or State when they bring suit on behalf of recipients of AFDC.[14] The reasoning in those cases is that because the AFDC recipient assigns his right to support to the state, the support is collected on behalf of the state as assignee and not on behalf of the recipient.[15] Consequently, the State rather than the AFDC recipient is the "client" of the district attorney.[16] However, apparently no court has squarely answered the question of whether a non-AFDC recipient is the client of the district attorney.

■ In our view, three reasons indicate the Legislature intended our statutory scheme to provide that district attorneys who enforce and collect child support obligations represent the State rather than the individual making application, regardless of whether such individual was an AFDC recipient. These are 1) although the statutory scheme as it existed when this matter arose did not expressly identify the State, rather than the custodial parent, as the client and the scheme is subject to some doubt, one fair construction is that the State was intended to be the client; 2) the Legislature recently promulgated a new provision which we believe was meant to clarify previous intent and clear up any ambiguity in the area; and 3) the inherent potential for conflicts of interest between the district attorney and the private custodial parent should a determination be made the parent was the client, rather than the State.

56 O.S.Supp.1987, § 237(C)(3) provides in pertinent part, "[i]f an assignment has

---

**13.** 42 U.S.C. § 654(6)(A). Haney informs us in her appellate brief she is not receiving any state or federal aid. For the purposes of this opinion we assume such fact as true.

**14.** *See State ex. rel. Dept. of Human Services v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866, 869 (1985); *Medsker v. Adult & Family Services Division,* 42 Or.App. 769, 601 P.2d 865 (1979); *County of Santa Clara v. Support, Inc.,* 89 Cal.App.3d 687, 701, 152 Cal.Rptr. 754, 763 (Cal.App.1979);

*Gibson v. Johnson,* 35 Or.App. 493, 582 P.2d 452 (1978).

**15.** *Warlick v. Public Welfare Division,* 29 Or. App. 21, 562 P.2d 223, 225 (1977).

**16.** *Jager v. County of Alameda,* 8 Cal.App.4th 294, 10 Cal.Rptr.2d 293, 295 (1 Dist.1992); *Gibson v. Johnson,* 582 P.2d at 456, *supra,* note 14.

been made pursuant to this section *or a proper application made by an individual not receiving aid to families with dependent children,* support payments shall be made to [DHS]". (emphasis added). Further, *all* support payments made to DHS, regardless of whether they are on behalf of recipients of AFDC, are deposited in the Child Support Escrow Account.[17] Once received, DHS must disburse the payments according to federal regulations.[18] Although money collected in a non-AFDC situation will be passed through to the custodial parent these provisions show the non-AFDC parent lacks a direct right to the proceeds recovered by a district attorney.

Further, the State has a pecuniary interest in child-support enforcement regardless of whether or not the custodial parent is an AFDC recipient. Title IV, Part D was not only enacted in order to recoup payments made for AFDC recipients, but also to help families avoid becoming dependent on the State through lack of support from an absent parent.[19] This latter purpose has been recognized as one intended by Congress to protect the public fisc by lessening the welfare rolls.[20] Although the custodial parent and the minor child also obviously gain from enforcement and collection efforts of the district attorney, the above provisions and the public purpose fostered by them, although not free from doubt, seem to indicate a legislative recognition the district attorney represents the State rather than a private party. At a minimum, such a conclusion is a fair construction of the statutory scheme given the absence of a definitive expression of legislative intent.

We are also lead to the conclusion the State was always intended to be the client by the Legislature by a recent addition to the statutory scheme concerning enforcement by a district attorney. In 1992, the Legislature added a new law [56 O.S.Supp. 1992, § 237.3] which specifically states a district attorney represents the State in such enforcement proceedings and no attorney-client relationship is created with any other party. Section 237.3 provides in pertinent part:

A. Attorneys employed by [DHS] for the ... establishment, enforcement and collection of child support obligations under Part D of Title IV of the Federal Social Security Act, 42 U.S.C., Section 651 et seq., or attorneys acting for [DHS] through an agreement as set forth in Section 237.1 of this title may represent the state or other states in administrative or civil actions.

B. Department attorneys represent the state and not the interests of any other party. Providing services under Title IV–D of the federal Social Security Act does not create an attorney-client relationship with any other party.

(footnote omitted).

We have recognized that where the Legislature amends a law it may have intended either to effect a change in the existing law or clarify that which was previously doubtful. *Magnolia Pipe Line Company v. Oklahoma Tax Commission,* 196 Okla. 633, 167 P.2d 884, 888 (1946). When the former statute is clear or where its meaning has been judicially determined an amendment may reasonably be presumed to alter existing law. *Id.* However, where the meaning of a statute was subject to serious doubt it may be presumed the amendment was meant to more clearly express a legislative intent previously indefinitely expressed. *Id.* In our view, the statutory scheme concerning a district attorney's involvement in child support enforcement prior to this recent change was ambiguous, it was subject to doubt and the scheme had received no previous judicial construction as to whether the State or the custodial parent was the client. In such a situation we believe the addition of § 237.3

---

17. 56 O.S.Supp.1987, § 237(E).

18. 56 O.S.Supp.1988, § 235.

19. *Carelli v. Howser,* 923 F.2d 1208, 1210–1211 (6th Cir.1991); *South Carolina Dept. of Social Services v. Deglman,* 290 S.C. 542, 351 S.E.2d 864, 865–866 (1986); *see* S.Rep. No. 1356, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 8133, 8145–46, 8158.

20. *Carelli v. Howser,* 923 F.2d at 1211, *supra,* note 19.

was intended to clarify legislative intent to the effect the client was, indeed, the State rather than any private individual.

One final matter leads us to the view the State was the intended client under the relevant statutory scheme. District attorneys have a statutory duty to prosecute or defend any action in which a county in their district is interested or is a party.[21] They are prohibited from engaging in the private practice of law.[22] Further, a district attorney cannot act as a purely private prosecutor.[23] These statements merely recognize a district attorney represents the public interest, not the interests of private individuals. If the intent of the Legislature was to recognize or establish an attorney-client relationship between a district attorney and a custodial parent in a situation under the statutory scheme at issue here, a situation would exist which would foster or raise the potential for serious conflicts of interest within that relationship. For example, a district attorney would be compelled to prosecute his "client" should the individual violate criminal statutes. Further, if custody of the child is transferred to another, the district attorney could be compelled to enforce support payments against his former "client", which inherently would pose confidentiality problems. We simply do not believe the Legislature intended such potential results, but instead at all times recognized district attorneys were deemed to represent the interests of the State, rather than the custodial parent.

Consequently, because one reasonable view of the statutory scheme as a whole does fairly support a conclusion the client is the State rather than the custodial parent; because we believe the recent change making express the State is the client was meant to clarify existing law rather than to change it; and, because we do not believe the Legislature intended district attorneys to represent private interests which would raise the potential for serious conflicts of interest, we hold no attorney-client relationship arose between Haney and the District Attorney which would support her claim for professional negligence. Accordingly, the order of the trial court denying the motion to dismiss is

**REVERSED AND THE MATTER IS REMANDED TO THE TRIAL COURT WITH DIRECTIONS TO DISMISS.**

HODGES, C.J., and HARGRAVE, ALMA WILSON, KAUGER and WATT, JJ., concur.

SIMMS, OPALA and SUMMERS, JJ., concur in judgment.

---

**21.** 19 O.S.Supp.1992, § 215.4.

**22.** 19 O.S.1991, § 215.7.

**23.** *Lee v. State*, 28 Okl.Cr. 397, 231 P. 324 (1924).