**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM J. QUIGLEY and DOROTHY
QUIGLEY,

      Plaintiffs-Appellants,

v.

SAUL F. ROSENTHAL, in his individual
capacity and in his capacity as
representative of the Anti-Defamation
League, and the ANTI-DEFAMATION
LEAGUE,

      Defendants-Appellees.

No. 04-1501

(D.C. No. 94-N-2782)
(D.Colo.)

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 94-N-2782)**

---

Robert T. Fishman, Denver, Colorado (Jay S. Horowitz, Horowitz Wake & Forbes,
Denver, Colorado, and Nancy Gegenheimer, Holme Roberts & Owen, LLP, Denver,
Colorado, with him on the briefs), for plaintiffs-appellants.

Shelley B. Don, (Watson W. Galleher with him on the brief), Don, Hiller & Galleher,
P.C., Denver, Colorado, for defendants-appellees.

---

Before **BRISCOE, HARTZ**, Circuit Judges, and **HERRERA**, District Judge.[*]

---

[*] The Honorable Judith C. Herrera, United States District Judge for the District of
New Mexico, sitting by designation.

**BRISCOE**, Circuit Judge.

Plaintiffs William and Dorothy Quigley appeal from the district court's denial of their motion for attorneys' fees and non-taxable litigation costs. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

The underlying factual and procedural history of this civil action is detailed in Quigley v. Rosenthal, 327 F.3d 1044 (10th Cir. 2003), and will not be repeated here. In sum, the Quigleys filed suit in federal court against defendants the Anti-Defamation League (ADL) and Saul Rosenthal, the director of the ADL's Denver office, asserting various claims under federal and state law. Six of the Quigleys' claims, including claims under the Federal Wiretap Act, 18 U.S.C. §§ 2511(1)(d) and 2520(a) (based on the defendants' interception and use of the Quigleys' cordless telephone conversations), proceeded to trial in April 2000 and were submitted to a jury following approximately sixteen days of trial. On April 28, 2000, the jury found in favor of the Quigleys on five of those claims, including the claims under the Federal Wiretap Act, and awarded them damages in excess of $10,000,000.00.

On May 12, 2000, the Quigleys filed a motion for attorneys' fees and non-taxable litigation costs pursuant to the Federal Wiretap Act, 18 U.S.C. § 2520(b)(3). On April 5, 2001, the district court issued an order denying the Quigleys' motion for fees without

prejudice. In doing so, the district court stated as follows:

> Upon review of plaintiffs' motion and defendants' response thereto, the procedural posture of this case, and taking into account the parties' inability to agree on even the minutest of issues, I am of the opinion that the adjudication of plaintiffs' motion at this time would run counter to the principles of judicial economy. In light of an almost certain appeal by defendants (and possibly a cross-appeal by plaintiffs) of the jury's verdict, as well as my rulings before, during, and after trial, I find that it would be a waste of this court's limited resources to address the issue of attorney fees prior to an appellate decision or other final resolution of this case. By staying my decision on this issue, I do not mean to suggest that I doubt the outcome of my rulings or the jury's verdict on appeal. Rather, I am merely recognizing that, in the event the Tenth Circuit was to reverse the jury's verdict on plaintiffs' wiretap claim – the only claim under which plaintiffs' [sic] could conceivably recover attorney fees – any action taken on plaintiffs' motion for attorney fees would be for naught. Moreover, I am convinced that, despite plaintiffs' assurances to the contrary, the adjudication of attorney fees in this case will erupt into "second major litigation."
>
> For these reasons, and the additional reason that a ruling on plaintiffs' motion is unnecessary to perfect either party's right to appeal the substantive issues in this case, I conclude that plaintiffs' motion is not ripe for review at this time. <u>Accordingly, plaintiffs' motion for attorney fees and non-taxable costs is denied without prejudice.</u> Plaintiffs may, consistent with this Order, renew their motion if future circumstances warrant. Furthermore, given plaintiffs' counsel's proclivity to view my rulings as an interactive process, whereby I rule on an issue and counsel submits subsequent commentary on that ruling in the form of a motion (or motions) to reconsider – much like the "Sentence First – Verdict Afterwards" type of procedure parodied in *Alice in Wonderland* – plaintiffs' counsel is hereby advised that any motion for reconsideration of this Order is denied prospectively.

App. at 547-48 (emphasis added). The district court's order ended with this verbiage:

"Plaintiffs' motion for attorney fees and non-taxable costs . . . is DENIED without

prejudice." <u>Id.</u> at 548.

3

Defendants subsequently filed an appeal. This court affirmed in part and reversed in part, leaving intact the Quigley's judgment against defendants on their Federal Wiretap Act claims. Defendants then filed a petition for writ of certiorari with the Supreme Court. On March 1, 2004, the Supreme Court denied the defendants' petition. Quigley v. Rosenthal, 540 U.S. 1229 (2004).

On March 11, 2004, the parties filed pleadings with the district court advising there had been complete satisfaction of the judgment on the merits against the defendants. Those pleadings indicated, however, that the satisfactions filed did not address, satisfy or release the defendants from the Quigleys' asserted claim for attorneys' fees. On June 14, 2004, the district court, on its own initiative, entered an "amended final judgment." App. at 568-78. The stated purpose of the amendment was to comply "with the mandate of the United States Court of Appeals for the Tenth Circuit filed with th[e district] court on September 22, 2003 . . . ." Id. at 568.

On July 29, 2004, the Quigleys filed a pleading entitled "Plaintiffs' Request For A Hearing Upon Their Motion for Attorneys Fees And Litigation Costs And Plaintiffs' Amendments To Their Motion." Id. at 579-612. The pleading requested the district court to schedule a hearing on their original motion for fees and costs (i.e., the motion filed on May 12, 2000), and purported to update and amend that original motion to include requests for fees and costs incurred since the filing of the original motion. According to their proposed amendments, plaintiffs sought "a grand total of $6,377,945.20" in fees and

4

"litigation costs in the amount of $133,431.10." Id. at 588.

On September 15, 2004, defendants filed a pleading entitled "Defendants' Motion To Dismiss Plaintiffs' Amendments To Their Motion For Attorney Fees And Litigation Costs." Id. at 618. Defendants' motion asserted, in pertinent part, that "[p]laintiffs failed to comply with the mandatory requirements of F.R.C.P. 54(d)(2)(B) by not filing their Fee Claims within fourteen days of [the district court's] Final Amended Judgment [on June 14, 2004] . . . ."[1] Id. at 619.

Plaintiffs filed a pleading in opposition to the defendants' motion to dismiss. In arguing that their June 29 pleading was timely filed, plaintiffs asserted that the district court "did not 'rule on' [their original motion] for fees" or "establish 'a new period for filing' [their] motion for fees," and thus "the logical construction of the [district court's] April 5, 2001 Order [wa]s that the [district court] . . . 'deferred' ruling on [their original]

---

[1] Defendants also argued that (1) "[p]laintiffs failed to comply with D.C.COLO.LCivR 54.3 which sets forth the required information that must be contained in a motion for fees," (2) approximately $3.8 million of plaintiffs' requested fees were based on the contingent fees earned by plaintiffs' counsel, (3) "[p]laintiffs waived their right to assert their Fee Claims by not presenting them to the jury at trial, and now . . . [we]re asserting their Fee Claims in a fashion that w[ould] violate Defendants' right to have a jury decide the issues that Plaintiffs [we]re pressing," (4) "[p]laintiffs ha[d] already been 'made whole' by ADL's payment of the judgment," (5) "[a]ny additional recovery would . . . be an impermissible windfall to [p]laintiffs' counsel, who ha[d] already been paid more than $6 million in fees in this case," (6) "[p]laintiffs [we]re seeking a fee award for an improper purpose – to further punish Defendants," (7) plaintiffs' fee claims were "unconscionably excessive," and (8) most of plaintiffs' "expenses had nothing to do with their wiretap claim[s]." Id. at 619-20. The district court granted defendants' motion to dismiss without reaching these additional arguments. These additional arguments are therefore not the focus of this appeal.

5

motion for fees, specifically authorizing [them] to further prosecute their Motion if 'future circumstances' warranted." Id. at 746, n.1. Alternatively, plaintiffs argued that, "were [the district court] to adopt [defendants'] unsupported position that a 'second filing' was required, the [plaintiffs'] failure to have effected such a filing at some still undesignated deadline . . . must be considered 'excusable neglect,' [and] not a basis for rejecting [their] fees application altogether." Id. at 748, n.5.

On November 24, 2004, the district court issued an order and memorandum of decision granting defendants' motion to dismiss plaintiffs' amendments to their motion for attorneys' fees and denying plaintiffs' motion for attorneys' fees. In doing so, the district court began by noting that it had expressly dismissed without prejudice plaintiffs' original motion for attorneys' fees and costs. In light of that ruling, the district court concluded, it was not appropriate for plaintiffs to "file a request for a hearing upon a motion that [the district court] resolved years earlier," and "[s]uch a request c[ould] neither renew [p]laintiffs' initial motion, []or relate back to [p]laintiffs' initial motion." Id. at 821. In other words, the district court emphasized, "[t]he 'impression' from [its] order denying [p]laintiffs' initial motion for attorneys' fees was clear: if [p]laintiffs wished to receive attorneys' fees at the conclusion of the appeal, they would have to file a new motion in order to renew their request." Id. at 823. The district court further noted that it had entered an amended final judgment on June 14, 2004, in order to comply with the Tenth Circuit's mandate. Id. at 819. "In order for [p]laintiffs to bring before the court

6

their request for fees," the district court concluded, they "were required to file a new motion for attorneys' fees within the statutory time period" set forth in Federal Rule of Civil Procedure 54(d)(2)(B), i.e., within fourteen days after entry of the amended final judgment. Id. at 820. Because plaintiffs' motion was filed approximately forty-five days after the entry of the amended final judgment, the district court concluded plaintiffs' motion (to the extent it was construed as a new motion for fees and costs) was untimely and plaintiffs were "not entitled to attorneys' fees unless they [could] show excusable neglect." Id. at 821-22. Finally, the district court noted that plaintiffs "ha[d] not even filed a proper motion for attorneys' fees after the entry of the amended final judgment," and thus had failed to establish excusable neglect. Id. at 822.

## II.

Plaintiffs assert two basic arguments on appeal. First, plaintiffs contend that "[n]either F.R.Civ.P. 54(d)(2), nor the district court's April 5, 2001 Order, required that [they] file a second motion for attorneys' fees" within a certain time period "following the appeal of this case, or following the district court's possible entry, years later, of an amended final judgment." Aplt. Br. at 8. Second, and alternatively, plaintiffs argue that even if we conclude their motion was untimely under Rule 54(d)(2), "the district court erred by ruling that [their] failure was not the result of 'excusable neglect.'" Id. at 9.

### Timeliness of plaintiffs' motion

The Quigleys first argue that the district court erred in concluding that their July

7

29, 2004 pleading, if construed as a second or renewed motion for attorneys' fees and costs, was untimely under Federal Rule of Civil Procedure 54(d)(2). More specifically, the Quigleys contend the district court erred in construing Rule 54(d)(2) as requiring them to have filed their second or renewed motion for fees and costs within fourteen days following the district court's entry of the final amended judgment (on June 14, 2004).

Generally speaking, we review for abuse of discretion a district court's ruling on a motion for fees and/or costs under Rule 54(d)(2). See Rodriguez v. Whiting Farms, Inc., 360 F.3d 1180, 1190 (10th Cir. 2004). To the extent, however, the issue raised by the Quigleys implicates the district court's interpretation of Rule 54(d)(2), we apply a de novo standard of review. See Esposito v. United States, 368 F.3d 1271, 1275 (10th Cir. 2004) ("We review de novo the district court's interpretation of the Federal Rules of Civil Procedure.").

Rule 54(d)(2) provides, in pertinent part, as follows:

(A) Claims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial. (B) Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

Fed. R. Civ. P. 54(d)(2)(A)-(B).

The district court in this case effectively interpreted Rule 54(d)(2)(B)'s reference

8

to "judgment" as encompassing the amended final judgment it filed on June 14, 2004. Thus, the district court concluded that Rule 54(d)(2)(B) required the Quigleys to file a second or renewed motion for costs and fees on or before June 28, 2004. The Quigleys, however, contend the "amended final judgment" filed in this case did not qualify as a "judgment" for purposes of Rule 54(d)(2)(B), and therefore did not trigger the running of the fourteen-day time period for filing motions for costs and fees. More specifically, the Quigleys argue that because the amended final judgment "concerned only matters that had been fully and finally resolved and were, therefore, matters that were moot for purposes of appeal," Rule 54 was not implicated and they were not required to file a new motion for fees and costs within fourteen days of the entry of the final amended judgment. Aplt. Br. at 13.

We reject the Quigleys' arguments. Rule 54(a) states: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Speaking generically, it is beyond dispute that appeals can be taken from amended final judgments, including those entered following an appellate reversal or remand. Thus, although there was nothing in the amended final judgment entered in this case that either party would have challenged, the amended final judgment nevertheless constituted a "judgment" for purposes of Rule 54 (and the Federal Rules of Civil Procedure in general). E.g., United States v. Colvin, 204 F.3d 1221, 1224 (9th Cir. 2000) (concluding that appeal could have been taken from amended judgment entered following appellate remand);

9

United States v. Lineberger, 88 Fed. Appx. 655, 655 (4th Cir. 2004) (entertaining appeal taken from amended judgment issued after appellate remand).

The Advisory Committee's Notes accompanying Rule 54 bolster this conclusion. Those Notes explain, in pertinent part, how a district court may handle a request for costs and fees under Rule 54(d)(2)(B) and outline what happens if an amended judgment is entered following an appeal:

> If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved. A notice of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under subdivision (d)(2)(B) may effectively extend the period by permitting claims to be filed after resolution of the appeal. A new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court or the granting of a motion under Rule 59.

Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments (emphasis added). Clearly, the Notes anticipate the filing of a new "judgment" following reversal on appeal, and expressly indicate that the entry of such a judgment triggers the running (for a second time) of the fourteen-day time period set forth in Rule 54(d)(2)(B).

In sum, the district court correctly concluded that the amended final judgment it entered on June 14, 2004, constituted a "judgment" for purposes of Rule 54 (and the Federal Rules of Civil Procedure in general), and thus triggered the running of a new fourteen-day period for the Quigleys to file a second or renewed motion for costs and fees. The district court was in turn correct in concluding that the Quigleys' motion, filed

10

on July 29, 2004, was untimely under Rule 54(d)(2)(B).

*Excusable neglect*

In their second and alternative argument, the Quigleys contend that even if we conclude their second or renewed motion for costs and fees was untimely under Rule 54(d)(2), "the district court erred by ruling that [their] failure [to file within the fourteen day period set forth in Rule 54(d)(2)(B)] was not the result of 'excusable neglect.'" Aplt. Br. at 9. Under Federal Rule of Civil Procedure 6(b)(2), a district court "for cause shown may at any time in its discretion" consider an untimely motion for costs and fees under Rule 54(d)(2) "where the failure to" timely file "was the result of excusable neglect . . . ." Fed. R. Civ. P. 6(b)(2). We review for abuse of discretion a district court's decision whether or not to consider such an untimely motion. See Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1288 (10th Cir. 2002).

In their response to the defendants' motion to dismiss their renewed or second motion for costs and fees, the Quigleys only briefly mentioned the issue of excusable neglect, arguing as follows:

> [W]ere this Court to adopt [defendants'] unsupported position that a "second filing" was required, the Quigleys' failure to have effected such a filing at some still undesignated deadline, which even [defendants] cannot now specify and which this Court never established, must be considered "excusable neglect," not a basis for rejecting the Quigleys' fees application altogether.

App. at 748, n.5. The district court rejected this argument, concluding the Quigleys

11

"ha[d] set forth no valid reasons or arguments why an untimely motion for attorneys' fees [wa]s the result of excusable neglect." Id. at 822. "Indeed," in the district court's view, the Quigleys' "ha[d] not even filed a proper motion for attorneys' fees after the entry of the amended final judgment." Id.

After carefully examining the record on appeal, we conclude the district court did not abuse its discretion in rejecting the Quigleys' excusable neglect arguments. As the district court correctly noted, the Quigleys alleged no facts that we would recognize as constituting excusable neglect. See generally United States v. Torres, 372 F.3d 1159, 1161-62 (10th Cir. 2004) (discussing concept of excusable neglect). Instead, the sole reason for the Quigleys' delay in filing their motion for fees was their mistaken conclusion that the amended final judgment entered by the district court did not qualify as a "judgment" for purposes of Rule 54(d)(2)(B). Because it is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b), the district court acted well within its discretion in refusing to consider the Quigleys' untimely motion. See Pioneer Investment Servs. v. Brunswick Assoc., 507 U.S. 380, 392 (1993); Torres, 372 F.3d at 1163-64 ("[C]ounsel's misinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief unless the word excusable is to be read out of the rule.") (internal quotation omitted).

AFFIRMED.