FILED
United States Court of Appeals
Tenth Circuit

December 10, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES ROBERT HAMILTON,
RICHARD A. KUS,

   Plaintiffs - Appellants
   /Cross-Appellees,

v.

WATER WHOLE INTERNATIONAL
CORPORATION, doing business as
Floran Technologies; WOLFGANG
ZWANZIGER;

   Defendants - Appellees
   /Cross-Appellants

FLORAN TECHNOLOGIES
BARBADOS, INC.; FLORAN
TECHNOLOGIES US, INC.;
FLORAN TECHNOLOGIES, INC.,

   Defendants - Appellees.

Nos. 07-6153
& 07-6157
(W.D. Oklahoma)
(D.C. No. 5:04-CV-1216-M)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **McCONNELL**, Circuit Judges.

---

 [*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. INTRODUCTION

This case involves common law and statutory claims for back wages and other relief stemming from plaintiffs' employment with Water Whole International Corporation ("Water Whole"). Defendants Water Whole and Wolfgang Zwanziger challenge the jury verdicts in favor of plaintiffs Richard Kus and James Hamilton. Defendants allege the district court improperly admitted evidence of emotional suffering and past Water Whole settlements; improperly excluded evidence of Kus's and Hamilton's status as employees; erred in its jury instructions regarding alter ego and statutory wage claims; and improperly exercised jurisdiction over wage claims of non-residents under the Oklahoma Protection of Labor Act ("Wage Act"), Okla. Stat. Ann. tit. 40, §§ 165.1–165.11. Kus and Hamilton appeal the district court's denial of leave to amend their motion for attorney's fees and the subsequent denial of attorney's fees. They also appeal the entry of summary judgment for defendants Floran U.S., Floran Barbados, and Floran Canada (the "Floran companies"). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** in part and **reverse** in part.

## II. BACKGROUND

A. Factual History

Water Whole manufactured products for water treatment, water storage, and water distribution systems. Water Whole stopped salary payments to Kus and Hamilton, who were employed as Sales Managers for Water Whole, in March,

2003. Plaintiffs claimed Zwanziger, president of Water Whole, represented that new investor money was expected and they would receive back pay if they continued working.

Kus and Hamilton further alleged that during one meeting, Zwanziger also promised them each an additional 1000 shares of stock if they would continue working for Water Whole. Hamilton claimed that during his employment he suffered financial injury when Water Whole terminated his health insurance without first informing him. Hamilton alleged he did not learn of the termination of his health insurance until he had an outpatient procedure and attempted to file a claim with his insurance company.

Kus's employment with Water Whole ended in December, 2003. Hamilton asserted he continued to work for Water Whole until June, 2004. Neither Kus nor Hamilton ever received any wages or salary for work performed after March 1, 2003.

In March, 2004, Water Whole and Floran Canada entered into a written contract providing for the purchase of Water Whole assets by Floran Canada. Water Whole's stockholders approved the asset sale on March 23, 2004. Pursuant to the asset purchase agreement, Floran Canada assumed $2,098,827 of Water Whole's debt. The transfer of assets from Water Whole to Floran Canada occurred in July, 2004. Floran Canada subsequently conveyed the assets to its subsidiaries, Floran US and Floran Barbados.

B. Procedural History

Hamilton and Kus filed suit against Water Whole, Zwanziger, and the Floran companies. The district court granted the Floran companies' motion for summary judgment, concluding Hamilton and Kus failed to present a genuine issue of material fact as to whether the Floran companies were the alter egos of Water Whole.

The claims against Water Whole and Zwanziger were tried before a jury. Hamilton and Kus asserted claims under the Wage Act seeking their respective unpaid wages and expenses, stock, and liquidated damages. They also asserted claims of fraud against Water Whole and Zwanziger premised on repeated promises to pay for past and future work that constituted material misrepresentations or reckless falsehoods. Hamilton and Kus contended the representations were made to fraudulently induce their continued employment with Water Whole.

During trial, evidence of plaintiffs' emotional distress and Water Whole's settlements with other employees was introduced over objection. In addition, the district court rejected defense evidence of plaintiffs' work for other companies during the time period when they were purportedly Water Whole employees.

On the Wage Act claims, the jury awarded both Kus and Hamilton wages, compensation for the promised stock, and liquidated damages. On the fraud claims, Kus and Hamilton each received actual and punitive damages. Kus and

Hamilton filed a motion for attorney's fees based on the wrong statute. The district court denied their request for leave to amend the motion and denied the motion for fees.

## III. DISCUSSION

A. The Floran Defendants

This court reviews orders granting summary judgment *de novo*. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 785 (10th Cir. 2004). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making this determination, courts are to view the factual record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998). This court reviews *de novo* a district court's interpretation of state law. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

Kus and Hamilton alleged the Floran companies were alter egos of Water Whole. The Oklahoma Supreme Court has held if a "corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation" the two corporations will no longer be considered distinct legal entities. *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, 61 P.2d 645, 648 (Okla. 1936). The factors to be considered in making this determination are:

(1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.

*Gilbert v. Sec. Fin. Corp. of Okla.*, 152 P.3d 165, 175 (Okla. 2006).[1]

Kus and Hamilton submitted evidence demonstrating that a number of Water Whole officers and directors served in similar capacities for the Floran companies. They also submitted evidence of the Floran companies' use of the IP address, business address, phone number, and fax number formerly used by Water Whole. Finally, they submitted testimony from former Water Whole Vice

---

[1] We note that it appears *Gilbert* is the test for piercing the corporate veil, not for determining successor liability. The test for successor liability is set forth in *Williams v. Bowman Livestock Equipment Co.*, 927 F.2d 1128, 1132 n.4 (10th Cir. 1991) (stating that under Oklahoma law, "[i]n order for a corporation that acquires all, or substantially all, the assets of another corporation to succeed to the debts and liabilities of the selling corporation there must be some evidence that (1) there was an agreement to assume such debts or liabilities, (2) there was a de facto merger, (3) the transaction was fraudulent in fact, or (4) the purchasing corporation was a mere continuation of the selling company"). *See also Pulis v. U.S. Elec. Tool Co.*, 561 P.2d 68, 69 (Okla. 1977). Because, however, the district court and parties analyzed the successor liability issues under *Gilbert*, and this court would reach the same result under either test, we proceed under the *Gilbert* analysis for purposes of this Order and Judgment.

President, Tobey Simpson, that at the Board of Directors meeting where the asset sale was approved, someone stated the reason for the sale was "Water Whole was allegedly not making enough money [due to] too many pending lawsuits."

Viewing the facts in the light most favorable to Kus and Hamilton, there is insufficient evidence to create a genuine issue of material fact as to the alter ego issue. The two companies' use of the same IP address, business address, phone number, and fax number occurred because these were Water Whole assets purchased by Floran Canada pursuant to the asset purchase agreement. Even though Floran and Water Whole may have some common officers, directors, or employees, this by itself is insufficient to create a genuine issue of material fact on the alter ego issue. *See Warner v. Hillcrest Med. Ctr*., 914 P.2d 1060, 1067 (Okla. Civ. App. 1995) ("The showing of a common board of directors and a unity of corporate purpose is insufficient to pierce the corporate veil."). The statement at the Board of Directors meeting reflects only someone's opinion as to the reason Water Whole was having financial difficulties necessitating the sale of its assets. It does not demonstrate, as Hamilton and Kus claim, a motive on the part of Water Whole to sell its assets in order to avoid the lawsuits and yet continue to operate as before. Hamilton and Kus have thus failed to present a genuine issue of material fact supportive of their alter ego claim. *See id.* (requiring evidence establishing two corporations were "so closely linked and so inextricably intertwined as to be effectively one entity" in order to impose alter

-7-

ego liability). We therefore affirm the district court's grant of summary judgment to the Floran Defendants.

B. Defendants Water Whole and Zwanziger

1. Alter Ego Jury Instruction

Water Whole and Zwanziger contend the district court erred in its jury instruction regarding the imposition of alter ego liability upon Zwanziger, a minority shareholder of Water Whole. Jury Instruction No. 22 read:

> Generally, corporate board members, officers, and shareholders are protected by its limited liability status from being held individually liable for the debts of the corporation. However, under Oklahoma's "alter ego" doctrine, the privilege of limited liability may be removed to hold individuals liable for corporate debts, where such individuals have failed to respect the separate identity of the corporation so that the individual and corporation are indistinguishable. In considering whether the "alter ego" doctrine applies, you should consider:
>
> (1) whether defendant Zwanziger's disregard of the corporate identity of defendant Water Whole made it a mere instrumentality for the transaction of his own affairs;
>
> In determining whether the corporation is the mere instrumentality of an individual, factors to consider include:
>
> > (a) whether the corporation is undercapitalized;
> > (b) whether the corporation is without separate books;
> > (c) whether the corporation's finances are not kept separate from individual finances, individual obligations are paid by the corporation, or vice versa;
> > (d) whether corporate formalities are not followed; or
> > (e) whether the corporation is merely a sham.

-8-

(2) whether there is such a unity of interest and ownership that the separate personalities of defendant Water Whole and defendant Zwanziger no longer exist; and

(3) whether adhering to the general rule of limited liability would promote injustice or protect fraud.

On appeal, Water Whole and Zwanziger allege Instruction No. 22 failed to address the issue of control, a necessary consideration in the alter ego analysis under Oklahoma state law. *See Gilbert*, 152 P.3d at 175. At trial, however, Water Whole and Zwanziger objected solely on the basis that paragraph (3) was too broad. Because Water Whole and Zwanziger failed to object at trial to the Instruction on the grounds now advanced on appeal, this court reviews the district court's decision to use the Instruction for plain error. *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1245 (10th Cir. 2000). Here, there is no error, plain or otherwise, of the sort claimed on appeal.

The jury was instructed to consider, *inter alia*, whether Water Whole was a "mere instrumentality for the transaction of [Zwanziger's] own affairs" and "whether there is such a unity of interest and ownership that the separate personalities of defendant Water Whole and defendant Zwanziger no longer exist." These provisions of Instruction No. 22 sufficiently addressed the issue of control and the appellate challenge lacks merit.

2.     Wage Act Jury Instruction

Water Whole and Zwanziger challenge Jury Instruction No. 10, which read:

Plaintiffs claim that they are entitled to unpaid salary, expenses, and bonuses of shares of company stock as wages. Under Oklahoma law, whenever an employee's employment terminates, the employer shall pay the employee's wages in full . . . . If you find by the greater weight of the evidence that plaintiffs' employment terminated, then you must determine the wages to which they are entitled.

On appeal, Water Whole and Zwanziger argue the Instruction is improper because it fails to explicitly instruct the jury on a key element of the wage claim: that in order to receive back wages, Hamilton and Kus must have remained "employees" of Water Whole after payment of their salaries ceased. *See* 15 Okla. Op. Att'y Gen. 195 (1983).

Water Whole and Zwanziger, however, failed to object to Instruction No. 10 at trial. This court therefore reviews the district court's decision to give Instruction No. 10 for plain error. *Greene,* 210 F.3d at 1245. The words "employee" and "employment" appear in the Instruction multiple times, and the Instruction makes clear that Kus and Hamilton are seeking damages under the Wage Act as "employees." As a consequence, Instruction No. 10 sufficiently confined damages to the period of employment and there was no instructional error.

3.    Evidence of Settlements

Water Whole and Zwanziger contend the district court improperly admitted evidence of settlements between Water Whole and other employees. At trial, Water Whole and Zwanziger objected to the introduction of this evidence under

-10-

Federal Rules of Evidence 401, 402, and 403. On appeal, they urge that the evidence should have been excluded under Federal Rule of Evidence 408, which prohibits the introduction of settlement offers to prove liability. Because Water Whole and Zwanziger did not object to the admission of this evidence under Rule 408 at trial, this court reviews for plain error. *Greene,* 210 F.3d at 1245.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006) (quotation omitted). "[A]n error is 'plain' if it is clear or obvious at the time of the appeal." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1124 (10th Cir. 2005).

The district court ruled that the evidence of prior claims or settlements involving Water Whole was admissible if offered for reasons other than those barred by Rule 408. While settlements may not be introduced to prove liability, evidence of such settlements is admissible under Rule 408 for other purposes. Fed. R. Evid. 408. The record, including counsel's closing argument, demonstrates the evidence was offered as part of the fraud claims to prove a willful pattern of conduct by Zwanziger. Due to the evidence's relevance to Water Whole's alleged plan to induce employees to continue working without pay and the context in which it was introduced, it is not clear that the evidence was admitted for purposes improper under Rule 408. *See Bradbury v. Phillips*

*Petroleum Co.*, 815 F.2d 1356, 1363-64 (10th Cir. 1987) (holding evidence of settlement of prior claims admissible under Rule 408 where offered to show defendants' course of reckless conduct, lack of mistake, control, and intent). Thus, the error, if any, was not plain.

> 4.      Evidence of Kus's and Hamilton's Other Work

Water Whole and Zwanziger allege the district court erred by not allowing evidence regarding Kus's and Hamilton's work for other enterprises during the time period when they claimed to be Water Whole employees. They argue on appeal that this evidence was relevant to prove Hamilton and Kus were independent contractors working on commission, not employees, for purposes of recovery under the Wage Act. At trial, however, Water Whole and Zwanziger attempted to introduce this evidence only as character evidence bearing on the credibility of Kus and Hamilton. Consequently, this court reviews the district court's denial of this evidence for plain error. *Greene,* 210 F.3d at 1245.

Even if the district court erred in denying the admission of this evidence, such error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings as required under the plain error test. *Morales-Fernandez,* 418 F.3d at 1122-23. The district court allowed Water Whole and Zwanziger to introduce testimony that those who continued to work for Water Whole after their salaries were terminated did so only on a commission basis. Thus, the district court did not wholly deny Water Whole and Zwanziger the opportunity to present

-12-

evidence on the issue of whether Kus and Hamilton remained "employees." In addition, Zwanziger and Water Whole themselves did not view this evidence as essential to support their contention that Kus and Hamilton were only working on a commission basis. They offered the evidence only to demonstrate Kus and Hamilton were disloyal employees whose testimony the jury should not find credible. Consequently, this court cannot say that the district court's error, if any, in failing to admit the evidence on grounds not even advanced by the proponent, constitutes a miscarriage of justice. *Morales-Fernandez*, 418 F.3d at 1124 (stating that in order to satisfy the fourth prong of the plain error test, the party must show that allowing the error to stand would result in a miscarriage of justice); *see also Petty v. Ideco*, 761 F.2d 1146, 1150 (5th Cir. 1985) ("The plain error rule is an extraordinary remedy which is invoked only in exceptional circumstances to avoid a miscarriage of justice.") (quotation omitted).

     5.    Scope of the Wage Act

Water Whole and Zwanziger contend the district court erred in construing the Wage Act to apply to wage claims by non-residents. This Court reviews *de novo* a district court's interpretation of state law. *Salve Regina Coll.,* 499 U.S. at 231. The relevant provision of the Wage Act reads:

> 1. "Employer" means every individual, partnership, firm, association, corporation, the legal representative of a deceased individual, or the receiver, trustee or successor of an individual, firm, partnership, association or corporation, employing any person in this state;

-13-

     2.  "Employee" means any person permitted to work by
     an employer.

Okla. Stat. Ann. tit. 40, § 165.1.

Water Whole and Zwanziger contend the definitions demonstrate an intent by the

Oklahoma Legislature to exclude non-residents from the Wage Act's protection.

     The Oklahoma courts have not yet addressed the issue presented here.

Thus, this court "must endeavor to predict how the [Oklahoma] high court would

rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir.

2006).  In construing statutes under Oklahoma law, courts are to further the

intention of the Legislature.  *Haney v. State*, 850 P.2d 1087, 1089 (Okla. 1993).

"[T]he cardinal rule is to begin with consideration of the language used." *Id.*

(citation omitted).  This court is to interpret a statute "in accordance with [its]

plain, ordinary meaning according to the import of the language used." *Graham

v. Travelers Ins. Co.*, 61 P.3d 225, 232 (Okla. 2002) (citation omitted).  "Only

where the legislative intent cannot be ascertained from the statutory language, i.e.

in cases of ambiguity or conflict, are rules of statutory construction employed."

*Keating v. Edmondson*, 37 P.3d 882, 886 (Okla. 2001) (citation omitted).

     Considering the plain language of the Wage Act, Water Whole

unambiguously falls within the definition of "employer" because it is a

corporation "employing any person in this state."  Okla. Stat. Ann. tit. 40,

§ 165.1.  It is undisputed that Water Whole employed a number of individuals in

Oklahoma.  Since Water Whole meets the definition of employer, the next step is to consider whether Kus and Hamilton each meet the definition of "employee." An employee is "any person permitted to work by an employer."  *Id*.  Since it is undisputed that both Hamilton and Kus served as Sales Managers for Water Whole, the "employee" definition is also met.  Therefore, the district court did not err in construing the Wage Act to apply to non-resident claims.

### 6.  Evidence of Mental Suffering

Water Whole and Zwanziger contend the district court committed error by allowing Kus and Hamilton to testify over objection about the mental distress they suffered as a result of Zwanziger's fraudulent misrepresentations.  This court reviews a district court's decision to admit evidence for abuse of discretion. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000).

The final pretrial order[2] contains no claim for damages from the alleged fraud under a theory of mental or emotional distress, anguish, or suffering. Hamilton and Kus argue their amended complaint explicitly sought general damages resulting from the fraud.  This is irrelevant, however, as "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint."  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).  Because there is no mention of damages for mental suffering in

---

[2]This document is actually titled "final pretrial report," but this opinion will refer to it as the "final pretrial order" so as to avoid confusion with past circuit precedent.

the pretrial order, the district court abused its discretion by allowing evidence of such damages. Furthermore, we cannot say that the error was harmless because it is unknown whether the actual damages awarded on the fraud claims included emotional distress damages and, if so, what amount was allocated to emotional distress. Fed. R. Civ. P. 61 ("[T]he court must disregard all errors that do not affect any party's substantial rights."); *see also U.S. v. Cestnick*, 36 F.3d 904, 910 (10th Cir. 1994) (explaining that the erroneous admission of evidence is not harmless where it leaves one in grave doubt as to whether the evidence had a substantial influence on the jury in reaching its verdict). We therefore reverse the awards of actual and punitive damages on the fraud claims and remand to the district court for a new trial.[3] If the district court is unable to conclude, based on the record before it, that the injury element of the fraud claim was found by the jury based on evidence independent of emotional distress, a new trial must be held on the issue of injury; otherwise, the sole issue for retrial is the *amount* of damages, independent of emotional distress, resulting from the fraud.

7.    Attorney's Fees

---

[3]Water Whole and Zwanziger further contend the fraud claim should not have been submitted to the jury at all because "nothing else in the transcript of the trial or exhibits can otherwise explain the awards of actual damages under [the] fraud claims." This contention is without merit. The record contains evidence of actual damages suffered by Kus and Hamilton, such as the lost wages and debt incurred as a result of the alleged misrepresentations. In addition, Hamilton testified he suffered financial injury when Water Whole terminated his health insurance without first informing him.

Kus and Hamilton contend the district court erred by denying their application for leave to file a new motion for attorney's fees and subsequently denying their motion for attorney's fees. This court reviews the district court's decision whether or not to consider an untimely motion for abuse of discretion. *Quigley v. Rosenthal*, 427 F.3d 1232, 1237 (10th Cir. 2005). This court also reviews the district court's denial of attorney's fees for abuse of discretion. *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1548 (10th Cir. 1996).

Under Rule 54 of the Federal Rules of Civil Procedure, a motion for attorney's fees must be filed "no later than 14 days after entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(I). A district court may, however, "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In determining whether a party's neglect is excusable, this court considers: 1) the danger of prejudice to the opposing party, 2) the length of delay caused by the neglect and its impact on judicial proceedings, 3) the reason for delay, and whether it was in the reasonable control of the moving party, and 4) the existence of good faith on the part of the moving party. *U.S. v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (analyzing the excusable neglect standard in the context of Federal Rule of Appellate Procedure 4(b)(4), where the party filed an untimely notice of appeal); *see also Quigley*, 427 F.3d at 1238 (applying the *Torres* standard to a claim of

-17-

excusable neglect under Federal Rule of Civil Procedure 6(b)).  The reason for delay is an important, if not the most important, factor in this analysis.  *Torres*, 372 F.3d at 1163.

On October 3, 2006, Kus and Hamilton filed a timely motion for attorney's fees.  In support of their motion, Kus and Hamilton erroneously cited 42 U.S.C. § 1988(b), the statutory basis for attorney's fees in civil rights actions.  The proper basis for recovery is Okla. Stat. Ann. tit. 40, § 165.9(b), which provides for attorney's fees under the Wage Act.  In its response filed October 24, 2006, Water Whole highlighted this discrepancy and argued the fee application therefore failed to meet the requirements of Rule 54(d) that a motion for attorney's fees be filed "no later than 14 days after entry of judgment" and "specify the judgment and the statute . . . entitling the movant to the award."  Fed. R. Civ. P. 54(d)(2)(B)(i)-(ii).  In a November 16, 2006 motion to amend the original motion for fees, counsel for Kus and Hamilton claimed that due to transitions in his office and a lack of support staff, he had not become aware of defendants' October 24, 2006 response until that day.  On November 29, 2006, the district court entered an order granting leave to amend, but immediately withdrew the order because Water Whole's time to respond to the application for leave to amend had not yet expired.

Water Whole filed a response in opposition to the application for leave to amend and the district court subsequently denied the application for leave to

-18-

amend. The court reasoned that because Kus and Hamilton would satisfy the requirements of Rule 54 if granted leave to amend, Water Whole would "clearly be prejudiced by allowing plaintiffs to amend their motion." The court further concluded that "the plaintiffs have not set forth sufficient good cause for granting them leave to amend, particularly in light of the fact that their motion to amend was filed forty-four days after their original motion for attorney fees and twenty-three days after Defendants' response."

Kus and Hamilton contend the district court abused its discretion by denying them leave to file a new motion for attorney's fees, yet granting defendants an extension of time to file a new response to the motion for attorney's fees after they filed the wrong document. They argue that the proposed amendment would not have prejudiced Water Whole, as the standard for determining reasonable attorney's fees is the same under both the mistakenly cited statute, 42 U.S.C. § 1988(b), and the proper statute, Okla. Stat. Ann. tit. 40, § 165.9. *Compare State ex. rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 661 (Okla. 1979) (employing a twelve factor standard for determining reasonable attorney's fees under Oklahoma law), *with Battle v. Anderson*, 541 F. Supp. 1061, 1070 n.12 (E.D. Okla. 1982) (employing same standard to a civil rights action under 42 U.S.C. § 1988(b)). Moreover, according to plaintiffs, the motion citing the incorrect statute not only gave notice to Water Whole that Kus and Hamilton sought attorney's fees, but also gave notice of the precise amount of attorney's

fees sought. Thus, Kus and Hamilton argue, Water Whole would not have been prejudiced by allowing them to amend the motion. Finally, they argue that because counsel's office was undergoing major transitions, there was sufficient good cause for the delay.

Water Whole responds that it would have been prejudiced by the expenditure of additional time and money to respond to an amended application for fees. Water Whole further points out that Kus and Hamilton offered no reason for the initial mistake, and offered only the transition in counsel's office as justification for filing the motion to amend forty-four days after the initial filing. Water Whole concludes Kus and Hamilton have therefore failed to demonstrate "excusable neglect" under Federal Rule of Civil Procedure 6(b).

Kus and Hamilton failed to provide the statutory basis under which they sought leave to amend their motion for fees. Because they sought to substitute a new motion citing the correct statutory basis for relief more than fourteen days after judgment was entered, the assumption must be that plaintiffs were seeking to file an untimely motion pursuant to Rule 6(b). The district court apparently made that assumption in referencing the Rule 6(b) requirement of good cause and relying upon three of the four factors informing excusable neglect in denying the application to file an untimely motion for attorney's fees, i.e., prejudice, length of the delay, and reason for the delay.

While the district court did not particularize the nature of the prejudice to defendants, it had before it defendants' assertion of prejudice due to the expenditure of additional time and expense in responding to a new motion for fees. The district court also relied upon the insufficient showing of good cause, highlighting the gap of forty-four days between the original motion for fees and the motion to amend and the passage of twenty-three days between defendants' response to the initial motion and the motion to amend. In so ruling, the district court noted that the only suggestion of good cause was that counsel's office was in transition and lacked support staff, not a compelling reason in light of the passage of a great deal of time.

Plaintiffs' contention that the district court abused its discretion because it denied them leave to file a new motion for attorney's fees yet granted defendants an extension of time to file a new response to the motion lacks merit. Unlike defendants, who within one day of filing their mistaken motion discovered and corrected their error, forty-four days passed before plaintiffs discovered their error and attempted to file a new motion. In addition, while defendants would have had to expend time and resources if plaintiffs were allowed to file a new motion, plaintiffs do not even attempt to argue that they were prejudiced by the one-day extension granted to defendants. The district court did not err by failing to respond to these significantly different situations in the same manner. Furthermore, it was within the district court's discretion to conclude that a

transition in counsel's office, by itself, did not justify such an extensive delay so as to warrant relief under Rule 6, especially when considering the potential prejudice to defendants. *See Ghamrawi v. Case & Assocs. Props. Inc.,* 116 Fed. Appx. 206, 210 (10th Cir. 2004) (denying relief under Rule 6(b) where "counsel's workload was out of control and counsel could not timely file the request because of other deadlines"); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir. 1981) (per curiam) (ruling that the fact that a solo practitioner is engaged in the preparation of other cases does not establish excusable neglect under Rule 6(b)(2)).

Finally, because Kus and Hamilton's motion for attorney's fees did not present a statutory basis under which such fees could be granted, they failed to meet the Rule 54 requirement of specifying the statute entitling them to the award of fees. Fed R. Civ. P. 54(d)(2)(B)(ii). Thus, the district court did not abuse its discretion in denying the motion for attorney's fees.

## IV. Conclusion

For the foregoing reasons, we **affirm** the awards of back wages, compensation for promised stock, and liquidated damages under the Wage Act; the grant of summary judgment to the Floran Companies; and the denial of leave to amend the motion for attorney's fees. We **reverse** the awards of actual and

punitive damages based on the fraud claims against Water Whole and Zwanziger and **remand** to the district court for proceedings consistent with this opinion.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge