RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ROAD SPRINKLER FITTERS LOCAL UNION NO.
669, U.A., AFL-CIO,

                *Plaintiff-Appellant,*

       *v.*

DORN SPRINKLER COMPANY; DORN FIRE
PROTECTION, LLC; CHRISTOPHER DORN;
DAVID DORN,

                *Defendants-Appellees.*

No. 10-4368

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00650—Michael R. Barrett, District Judge.

Decided and Filed: February 28, 2012

Before: COOK, McKEAGUE, and ROTH, Circuit Judges.[*]

_____

## COUNSEL

**ON BRIEF:** William W. Osborne, Jr., Natalie C. Moffett, OSBORNE LAW OFFICES,
P.C., Washington, D.C., David M. Cook, COOK, PORTUNE & LOGOTHETIS, LPA,
Cincinnati, Ohio, for Appellant. Katherine L. Kennedy, MANNION GRAY CO.,
L.P.A., Ft. Wright, Kentucky, for Appellee.

_____

## OPINION

_____

    McKEAGUE, Circuit Judge. Plaintiff Road Sprinkler Fitters Local Union No.

669, U.A. AFL-CIO ("Union") filed suit against Dorn Sprinkler Company ("Dorn

_____

[*] The Honorable Jane R. Roth, Circuit Judge of the United States Court of Appeals for the Third
Circuit, sitting by designation.

Sprinkler"), Dorn Fire Protection, LLC ("Dorn Fire Protection"), Christopher Dorn, and David Dorn (collectively "Defendants") alleging, among other claims, breach of an obligation of arbitration arising out of a collective bargaining agreement between Dorn Sprinkler and the Union. The district court granted summary judgment to Defendants, holding that Dorn Sprinkler was not the alter ego of Dorn Fire Protection, and thus, that Dorn Fire Protection did not have an obligation to arbitrate with the Union. The Union appeals. We affirm.

## I. BACKGROUND

Dorn Sprinkler was formed in May 1977 and its day-to-day operations were handled by its owner, David Dorn. This dispute arose when Dorn Sprinkler failed to make employer contributions to various benefit funds for three months in late 2006 and early 2007, as required by its collective bargaining agreement with the Union. As a result, the employees of Dorn Sprinkler organized a work stoppage on January 19, 2007 that rendered Dorn Sprinkler unable to continue operations. Subsequently, in March 2007, Dorn Sprinkler went out of business with its required payments to the benefit funds languishing in arrears. Although Dorn Sprinkler originally agreed to arbitrate the Union's grievances, it later refused on the ground that it had gone out of business.

Meanwhile, David Dorn's son, Christopher Dorn, who was lead salesman at Dorn Sprinkler, formed a company called Dorn Fire Protection, Inc. during the 1990s but had not started doing business. In October 2006, shortly before financial troubles surfaced in his father's business, Christopher changed the name of Dorn Fire Protection, Inc. to Dorn Fire Protection, LLC, and began operations.

After the demise of Dorn Sprinkler, the Union submitted a request to arbitrate grievances to Dorn Fire Protection under the theory that it is an alter ego of Dorn Sprinkler. Dorn Fire Protection refused to arbitrate with the Union on the grounds that it was not an alter ego of Dorn Sprinkler and had no contract with the Union. The Union brought this suit to recover, among other things, all losses resulting from Dorn Sprinkler's breaches and prohibited transactions, and to force Dorn Fire Protection to

arbitrate the Union's grievances.  *Road Sprinkler Fitters Local 669 v. Dorn Sprinkler Co.*, No. 1:07cv650, 2010 WL 1849341, at \*2 (S.D. Ohio May 4, 2010).

The district court, finding that Dorn Fire Protection is not an alter ego of Dorn Sprinkler, granted summary judgment to Defendants.  *Road Sprinkler Fitters Local 669*, 2010 WL 1849341, at \*5.  This appeal followed.

## II.  ANALYSIS

There is arguably conflicting authority in the Sixth Circuit as to the proper standard of review at the summary judgment level for a district court's determination that one company is (or is not) the alter ego of another.  We find that the proper standard is de novo review, and so we review the record afresh.  Because the record does not support a finding that Dorn Fire Protection is the alter ego of Dorn Sprinkler, we affirm the district court's decision to grant summary judgment.

## A.  Standard of Review for Alter-Ego Determinations on Summary Judgment

Ordinarily, this Court reviews a district court's grant of summary judgment de novo.  *Trs. of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.*, 395 F.3d 244, 247–48 (6th Cir. 2005).  Summary judgment is proper where the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Some Sixth Circuit cases have stated that an alter-ego determination is a finding of fact that should be reviewed for clear error—even when reviewing a district court's

grant of summary judgment.[1]  *See Detroit Carpenters Fringe Benefit Fund v. Indus. Contracting Co.*, 581 F.3d 313 (6th Cir. 2009). Others apply the ordinary, de novo standard. *E.g. Trs. of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.*, 395 F.3d 244, 247–48 (6th Cir. 2005).

Although an alter-ego determination is fact intensive, it is not readily distinguishable from most determinations made on summary judgment. It involves a multi-pronged standard that a district court must apply the facts against in order to interpret. *See NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331, 336 (6th Cir. 1990) (articulating the alter-ego standard as "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership"). On the face of Federal Rule of Civil Procedure 56, there is no apparent reason that the general standard for summary judgment should not apply in alter-ego determinations when they take place at the summary judgment level. *See* Fed. R. Civ. P. 56(a). Further, in considering a motion for summary judgment, courts must view the inferences to be drawn from the underlying facts in favor of the non-moving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. This drawing of inferences is not conducive to clear-error review. *Cf. id.* Therefore, while clear-error review may be appropriate for alter-ego determinations made later in litigation, de novo review is the appropriate standard where an alter-ego determination was made as part

---

[1]The *Detroit Carpenters* decision imported the language about clear error review from another Sixth Circuit decision, *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006). In *Yolton*, the panel was not reviewing a grant of summary judgment, but rather the grant of a motion for a preliminary injunction in which the district court concluded that plaintiffs were likely to succeed in their attempts to establish that one company was the alter ego of another. *See id.* at 589. In turn, *Yolton* derived the clearly erroneous standard of review from *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576 (6th Cir. 1986). But *Allcoast* dealt with the review of a decision by the National Labor Relations Board, in which the panel stated "[a] determination of alter ego status is a question of fact . . . and therefore the Board's conclusion must be enforced if supported by substantial evidence." *See id.* at 579. This genealogy of the "clearly erroneous" standard that was articulated in *Detroit Carpenters* reveals that it was misplaced. However, the analysis in *Detroit Carpenters* further reveals that the panel in that case engaged in de novo review of the legal issues involved, reversing the decision of the district court to grant summary judgment because its analysis "did not stand up to *de novo* review." *Detroit Carpenters Fringe Benefit Fund*, 581 F.3d at 319. Thus, the language articulating a clear-error standard of review is merely dicta, which will not bind subsequent panels. *See* Sixth Cir. Rule 206(c) (stating that one panel of this Circuit may not overrule a prior panel's published opinion). Nevertheless, the clear-error standard has crept into the analysis of unpublished decisions of this Circuit. *See Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Constr. Grp., Inc*, 394 F. App'x 285, 288 (6th Cir. 2010) (per curiam) (stating that, although judgment as a matter of law is normally reviewed de novo, alter-ego status is "a question of fact to be reversed only if clearly erroneous").

of a decision to grant or deny summary judgment.[2]  So, we review the district court's determination that Defendants are entitled to summary judgment de novo.

## B.  Alter-Ego Status

Where two companies are engaged in the same business in the same marketplace, courts ask "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership" to decide whether one is the alter ego of the other.  *Fullerton*, 910 F.2d 331, 336 (6th Cir. 1990) (quoting *Nelson Elec. v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981)).  Evidence, or lack thereof,  of an employer's intent to evade the obligations of a collective bargaining contract is merely one of the factors to be considered and is not a prerequisite to the imposition of alter-ego status.  *Id.* at 337.  This has been described as a "more relaxed, less exacting" application of the alter-ego doctrine applied "[i]n order to effectuate federal labor policies."  *Id.*  The analysis is flexible and "no one element should become a prerequisite to imposition of alter-ego status; rather, all the relevant factors must be considered together."  *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 582 (6th Cir. 1986).

Here, both Dorn Sprinkler and Dorn Fire Protection have the same business purpose and operate in the same marketplace.  They both contract to install automatic fire-protection systems for construction projects in Ohio and Kentucky.  So we consider the factors listed above in turn.

---

[2]Other circuits apply ordinary summary judgment analysis when reviewing a district court's grant or denial of summary judgment based on an alter-ego determination. *See Flynn v. R.C. Tile*, 353 F.3d 953, 957–60 (D.C. Cir. 2004) (reviewing grant of summary judgment de novo); *Occidental Fire & Casualty Co. v. Great Plains Local Capital Corp.*, 168 F.3d 500 (9th Cir. 1999) (unpublished table decision) (same); *Langone v. William Walsh, Inc.*, 101 F.3d 106 (1st Cir. 1996)  (unpublished table decision) (reviewing de novo, and also acknowledging the fact-intensive nature of the alter-ego inquiry, but affirming denial of summary judgment based on the plaintiff's submission of sufficient facts to establish alter-ego status); *see also Hamilton v. Water Whole Int'l Corp.*, 302 F. App'x 789, 792–94 (10th Cir. 2008) (discussing whether there existed a genuine issue of material fact as to whether defendants are alter egos of one another); *Operating Eng'rs Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc.*, 57 F. App'x 273 (8th Cir. 2003) (same).

First, the nature of the management structure in the two companies is not substantially identical. Although the Union suggests that "the same family members who had managed Dorn Sprinkler also managed Dorn Fire Protection," the record does not support this contention. The evidence suggests that (1) Christopher Dorn, who was lead salesman at Dorn Sprinkler is now the owner and President of Dorn Fire Protection; (2) his sister, Amy O'Shaughnessy, was front office manager and bookkeeper at Dorn Sprinkler and is now a bookkeeper at Dorn Fire Protection; and (3) David Dorn was President of Dorn Sprinkler and now does consulting work for Dorn Fire Protection. In light of these differences in management between the two companies, this factor militates against alter-ego status.

The Union relies heavily on the familial relationship between the leadership of the two companies. But even though the characters are the same and are related to one another, this does not necessarily mean the overall nature of management is the same in both companies. *See Kenmore Contracting Co. v. Int'l Assoc. of Bridge, Structural, & Orn. Iron Workers*, 289 NLRB 56 (June 24, 1988). Christopher Dorn is the owner and President of Dorn Fire Protection, but the evidence does not support a finding that he played a managerial role at Dorn Sprinkler. Similarly the evidence shows that David Dorn managed Dorn Sprinkler, but now he has a separate company, D&D Design, which has been hired by Dorn Fire Protection as well as several other companies. The evidence further shows that Amy O'Shaughnessy did not manage either company, that she also has her own fire inspection business now, and that she serves as Dorn Fire Protection's bookkeeper in exchange for the use of office space. None of these situations make the management of these two companies substantially identical. *Compare Kenmore Contracting Co.*, 289 NLRB 56 at *2 (finding substantially identical management where child capitalized new business only by virtue of funds from parents who owned original company).

The Union claims that the district court applied a more exacting legal standard than this Court's precedent requires, citing *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 587 (6th Cir. 2006). But, in fact, the district court applied a flexible

standard precisely like the one required in *Yolton*. It did not require identical ownership or intent to avoid labor laws, but instead considered the nature of the managerial roles at play and considered intent as one factor in its analysis. In *Yolton*, alter-ego status existed where the President and CEO of the original company was also the President and CEO of the second company; furthermore, the Vice President and Treasurer of the original company was also the Vice President and Treasurer of the second company. *See id.* at 588. Given the distinguishable facts in this case, the district court would not have had to apply a more exacting standard to find that alter-ego status did not exist here, even though it was not found to exist in *Yolton*.

Next, we consider the operation factor. This factor tends to cut against alter-ego status because, at the outset, the two companies were competitors. When Dorn Fire Protection was started, it rented separate office space from Dorn Sprinkler and attracted customers and employees of its own. Although the Union states that Dorn Fire Protection employed "a number of former employees of Dorn Sprinkler," only two of the fourteen Dorn Fire Protection employees worked for Dorn Sprinkler at or around the time of its closing, showing no real continuity of work force. Accordingly, the two companies' operations are not strongly related.

We also consider the equipment used by each company. The district court determined that the equipment factor also weighed against an alter-ego finding. *See Road Sprinkler Fitters Local 669*, 2010 WL 1849341, at \*4. It supported its finding by noting that Dorn Fire Protection had produced evidence to show that the equipment it acquired from Dorn Sprinkler was acquired through arms-length purchases. *Id.* The Union questions this determination, noting that there was no bill of sale for some of the equipment purchased and that Dorn Fire Protection "paid" for some of the tools through a swap for other tools it had purchased from Dorn Sprinkler in the past. However, contrary to the Union's contention that Dorn Fire Protection purchased equipment from Dorn Sprinkler "in commencing operations," the tools in question were acquired after Dorn Sprinkler went out of business, so Dorn Fire Protection began operations with all of its own tools, and in fact only acquired a limited number of tools and three pickup

trucks from Dorn Sprinkler.  Moreover, Dorn Sprinkler sold many tools to other contractors and not just to Dorn Fire Protection.  Accordingly, the overlap in equipment between the two companies was insubstantial.

Next, we consider the customer base of the two companies.  Despite the Union's claim that Dorn Fire Protection's customers "included a number of former Dorn Sprinkler customers," proportionally speaking, this argument is simply not persuasive.  Only nine out of Dorn Fire Protection's more than 250 customers were formerly Dorn Sprinkler customers.  Moreover, when Dorn Sprinkler went out of business, Dorn Fire Protection completed only two of the projects that were pending for Dorn Sprinkler and, when asked, declined to complete another.  However, several other contractors picked up where Dorn Sprinkler left off on other projects pending at that time.  Thus, the customer factor also suggests Dorn Fire Protection is not an alter ego of Dorn Sprinkler.

Finally, there is no evidence of intent on the part of the two companies to avoid the effect of the collective bargaining agreement.  Although the Union insinuates that Christopher left as a result of his father's decision to withhold funds from the benefit fund—with the implied purpose of avoiding the effect of the collective bargaining agreement—the record does not support that inference.  Apart from this insinuation, the Union does not suggest that there is evidence of intent.  Instead, it argues that the district court overly relied on the absence of intent when making its determination.  However, the short paragraph mentioning this factor and stating that the lack of evidence of intent merely "weighs against a finding of an alter ego" belies the Union's argument.  The district court did not err simply by noting and considering the lack of evidence of intent.  *See Fullerton*, 910 F.2d at 337.

### III.  CONCLUSION

Accordingly, upon de novo review, we **AFFIRM** the district court's grant of summary judgment in favor of Defendants.